Florence A. KAHN, Relator,

v.

STATE of Minnesota, UNIVERSITY OF MINNESOTA, Respondent,

and

Travelers Insurance Company, Respondent,

Blue Cross and Blue Shield of Minnesota-Minnesota Indemnity, Inc., Respondent.

No. 82–41.

Supreme Court of Minnesota.

Dec. 10, 1982.

Peterson, Engberg & Peterson and Thomas W. Wexler, Minneapolis, for relator.

Jennifer Patterson, St. Paul, for State of Minn., University of Minnesota.

KELLEY, Justice.

We granted a writ of certiorari to review a determination of the Assistant Commissioner of the Workers' Compensation Division (Commissioner) disallowing certain attorney fees claimed by the attorney for representation of the employee, Florence A. Kahn, in a workers' compensation claim against the State of Minnesota, University of Minnesota, et al. The Commissioner further held that Minn.Stat. § 176.081, subd. 7 (1980) did not require the employer to pay the formula portion of the employee's attorney fees since the law applicable on the date of injury governed. We hold that the determination of the Commissioner setting attorney fees was arbitrary and unwarranted by the evidence. We further hold that his interpretation of section 176.081, subd. 7 was correct. Accordingly, we affirm in part, reverse in part and remand.

On June 8, 1973, Florence A. Kahn was rendered quadriplegic in an automobile accident. Early in 1975, she claimed workers' compensation benefits from the University of Minnesota, contending that at the time of the automobile accident she was an employee of the University of Minnesota School of Nursing. The University denied her claim on three grounds: (1) that she

was an independent contractor and not an employee of the University; (2) that she was not in the course and scope of any employment by the University at the time of the injury; and (3) that the University had not received legal notice of her claim. Shortly after the filing of the claim petition, she retained the law firm of Peterson, Engberg & Peterson (Peterson firm) to represent her in this litigation. It was apparent to the Peterson firm from the time of its original retention that whether or not Mrs. Kahn would recover presented a close and complicated case that might well take years of effort. In fact, it did so. Extensive efforts by the firm were necessary in order to prepare the case. There were 3½ days of testimony, 17 depositions, 925 pages of transcript, a trial brief of 50 pages, a court of appeals brief of 24 pages and a brief to the Supreme Court of 100 pages. At each of the hearing and appeal levels extensive briefs were submitted by the State of Minnesota and, in the Supreme Court, by the Minnesota Association of Commerce and Industry. All these briefs had to be carefully read by the Peterson firm and the cases cited in them studied. The preparation of the Peterson firm included many meetings with the doctors and experts involved to develop the necessary medical testimony, continuing efforts to discover and analyze all available case law, and the writing of a number of briefs. Eventually the case reached this court and we, in *Kahn v. State,* 289 N.W.2d 737 (Minn.1980), sustained Mrs. Kahn's claim against the state. Our determination in that case, however, did not conclude the efforts of the Peterson firm on Mrs. Kahn's behalf. It thereafter proceeded to establish her right to receive retroactive supplemental benefits and interest on the retroactive benefits. It negotiated with the state to pay round-the-clock attendant care and past-due medical expense which Mrs. Kahn had personally paid and which was not covered by any insurance. It negotiated and entered into a stipulation of partial settlement with respect to past-due benefits, resulting in a payment of approximately $74,000 to Mrs. Kahn. The Peterson firm also negotiated an arrangement whereby the state would pay Mrs. Kahn, on an ongoing basis, attendant care in the approximate amount of $1,500 a month. The firm filed a second claim petition in July of 1981, seeking interest on past-due benefits in the approximate amount of $25,000 and, in addition, reimbursement for nursing services furnished by Mrs. Kahn's husband.

During the course of the representation of Mrs. Kahn, the Peterson firm maintained daily time records on this case in accordance with its general office practice. When the Peterson firm made application before the Commissioner of the Workers' Compensation Division for allowance of attorney fees, it substantiated an expenditure of 1003.9 hours in the representation of Mrs. Kahn at the stages of her workers' compensation claims. The firm claims that the time actually recorded on the time records was understated by as much as 10% because substantial additional time was spent in office discussions and on weekends and evenings and was, therefore, never recorded. In addition to attorney fees and expenses previously awarded during the course of this proceeding,[1] the Peterson firm sought attorney fees in the amount of $68,217. This requested fee was calculated by multiplying the hourly billing rate established by the firm for each attorney and law clerk by his or her time spent working on this case. The claimed fee constitutes approximately 7% of a conservative estimate of the relator's recovery of $1 million or less than 1½% of the state's highest estimate of the potential value of this claim of $5 million. Mrs. Kahn has, as a direct result of the Peterson firm's efforts, been awarded permanent total disability in the amount of $25,000; past-due medical benefits in the amount of $73,964.66; past-due supplementary benefits in the amount of $11,749.43; interest on permanent total, $6,452.90; interest on

---

1. The firm previously was awarded and paid $5,400 in attorney fees and most of its out-of-pocket expenses.

past-due medical, which is still in litigation, of the approximate amount of $25,000; ongoing supplementary benefits, currently approximately $7,500 per year; ongoing attendant care benefits, currently approximately $18,000 per year; ongoing routine medical expense benefits, currently approximately $2,400 per year; and, in addition, extraordinary medical expenses which may be necessary from time to time. As previously indicated, the estimate of the total amount of compensation she will receive is between $1 million and $5 million, depending upon her life span.

At the time the Peterson firm presented its request for award of attorney fees before the Commissioner, it presented to the Commissioner affidavits from Mrs. Kahn and from her husband outlining that each understood the nature and extent of the fee request and stating that each favored approval of the Peterson firm's fee request. The Commissioner disallowed the request but did allow additional attorney fees, over those previously paid, in the amount of $25,000. The firm contends that his determination not to award the claimed fee was arbitrary and unwarranted by the evidence.

■ 1. The Peterson firm's application for allowance of attorney fees was governed by Minn.Stat. § 176.081 (Supp.1980). Subdivision 2 of that statute permits attorneys to file applications with the Commissioner of the Department of Labor and Industry for fees in excess of those autho-

rized in subdivision 1. General principles to be considered in determining the reasonableness of the fee request are listed in subdivision 5 of the statute.[2] This statutory scheme for application and review of attorney fee requests evinces two distinct purposes. First, the statute is designed to protect compensation claimants from excessive legal charges which might otherwise severely deplete funds badly needed by the employee and his or her dependents. Second, the statute is designed to insure that attorneys who represent compensation claimants will receive reasonable compensation for their efforts, and is in furtherance of the public policy of this state that injured employees have access to representation by competent counsel knowledgeable of the intricacies of the workers' compensation law. *Rock v. Bloomington School District # 271*, 269 N.W.2d 360, 363 (Minn.1978). In reviewing the order of the Commissioner, we must examine the award with those dual statutory aims in mind. *Saari v. McFarland*, 319 N.W.2d 706, 708 (Minn.1982). Moreover, not only must the official or officials who make the determination on the fee request consider the factors enumerated in section 176.081, subd. 5(d), but he or they must also set forth findings of fact with respect to the weight he or they accord to each factor. *Minogue v. City of St. Paul*, 320 N.W.2d 90, 92 (Minn.1982).

We turn now to consider the data submitted in support of the fee request by the Peterson firm bearing upon the factors enumerated in section 176.081, subd. 5(d).

---

2. Minn.Stat. § 176.081, subd. 5 (1980) reads as follows:

Subd. 5. In the determination of the reasonable value of attorney fees arising out of a claim or proceeding under this chapter, the following principles are to be applied:

(a) The fee in each individual case must be a reasonable one.

(b) There is no set standard fee to be awarded in any workers' compensation matter.

(c) No attorney-client fee contract or arrangement is binding in any workers' compensation matter.

(d) In determining a reasonable attorney fee, important factors to be taken into account are: the amount involved, the time and expense necessary to prepare for trial, the responsibility assumed by counsel, the

expertise of counsel in the workers' compensation field, the difficulties of the issues involved, the nature of proof needed to be adduced and the results obtained. The amount of money involved shall not be the controlling factor.

(e) The determination of the fee in each specific workers' compensation matter must be done with the same care as the determination of any other fact question in the matter.

(f) The determiner of the attorney fee in each matter must ascertain whether or not a retainer fee has been paid to the attorney and if so, the amount of the retainer fee.

(g) The determiner of attorney fees in each case must personally see that the workers' compensation file contains fully adequate information to justify the fee that is determined.

■ A. *The Amount Involved:* The record shows that payments made and reasonably likely to be made in the future to Mrs. Kahn are between $1 million and $5 million, the exact amount depending upon her life span. While the statute states that the amount of compensation shall not be the "controlling factor," it clearly recognizes that it is among the "important factors" bearing upon the determination of a reasonable fee. The memorandum of the Commissioner accompanying his order acknowledges that "substantial benefits" were obtained for its client by the Peterson firm. Accepting the more conservative estimate of Mrs. Kahn's recovery of $1 million, the requested fee would approximate slightly less than 7% of the recovery, but if the potential value of the claim reaches $5 million it would approximate 1½%. In either event, we conclude the award of the Commissioner did not accord proper weight to this factor.

■ B. *The Time and Expense Necessary to Prepare for Trial:* Evidence submitted to the Commissioner revealed that attorneys in the Peterson firm spent in excess of 1,003 hours on the case over a period of approximately 7 years. A flat fee was used for each attorney or clerk and ranged from $20 an hour for law clerks to $75 an hour for the three attorneys primarily responsible for the litigation. Approximately 70% of the time claimed was for the "lead" attorneys, while 23% comprised work done by junior attorneys with the remainder for work done by law clerks. Considering the obvious difficulty of the issues and the nature of proof required, the length of the litigation, the several hearings, appeals, and stipulations negotiated by counsel, we can find no support in the record for the Commissioner's conclusion that the effort expended by the firm was beyond "what would be normally expected." The record demonstrates that competent and experienced attorneys in the workers' compensation area cannot afford to devote that much time and effort over a long period of time if they are to be denied reasonable fees for their services.

■ C. *The Responsibility Assumed by Counsel and Their Expertise:* The responsibility assumed by the Peterson firm required extraordinary effort at all stages up to and including appeals to this court. At the outset, there existed a serious and close question with respect to Mrs. Kahn's entitlement to any workers' compensation benefits. This required intensive investigation to discover and to present evidence that ultimately resulted in this court in *Kahn v. State,* 289 N.W.2d 737 (Minn.1980), by a 5–4 division, determining that she was injured in the scope of her employment by the University of Minnesota. Moreover, there were serious questions with respect to medical problems and types of benefits available to the firm's client. The responsibility of representing Mrs. Kahn, who has sustained a catastrophic disabling injury, was significant considering her long-term lifetime need for compensation benefits.

With respect to expertise, the skill of Mr. Wexler, the lead attorney, is not disputed. He, and the other "lead" attorneys, have specialized in handling workers' compensation and personal injury litigation. The Commissioner notes in his memorandum that the representation of Mrs. Kahn was accomplished "with high level of expertise." These established factors tend to support the granting of the firm's documented fee request as being reasonable, especially when that request was "weighted" so as to claim lower hourly fees for work done by less-experienced counsel in the firm.

■ D. *The Difficulties of the Issues and the Nature of the Proof Needed:* At the outset, the Peterson firm was faced with the difficult issue of establishing that Mrs. Kahn was entitled to any workers' compensation. The issue of whether, at the time of her injury, she was an employee of the University of Minnesota or whether she was an independent contractor was vigorously contested. Moreover, even if it could be established she had the status of employee, there existed the further issue of whether she was within the scope of her employment at the time of her injury. This presented a difficult factual issue. A num-

ber of other issues likewise existed that had to be resolved during the course of this protracted litigation such as whether the University had received legal notice of her claim, whether she was entitled to supplemental benefits, entitled to interest on retroactive benefits, entitled to attendant care and several other issues.[3] In our view, these factors deserved considerable weight.

■ E. *Results Obtained:* It is difficult to see how the results obtained by the Peterson firm could have been more favorable to its client. The state itself estimates that Mrs. Kahn's total compensation will range between $1 million and $5 million. Mrs. Kahn and her former husband, Dr. Alan Kahn, both well-educated and sophisticated professional people, each have indicated he or she understands the nature and extent of the Peterson firm's fee request and that each favors approval of that request. While that approval was not binding on the Commissioner, *see* section 176.081, subd. 5(c), these approvals do indicate that neither considered the fee request excessive and that allowance of the requested fee would not severely deplete funds badly needed by the employee. The payment of the fees requested would not have diminished Mrs. Kahn's standard of living. As indicated, the statute has a two-fold purpose—

one to protect those badly in need of funds for life support from excessive fees from overreaching attorneys, the other to insure attorneys who represent workers receive reasonable compensation for their efforts. But where, as here, people of the training, experience and sophistication of the Kahns, after being fully advised, concur that the employee's standard of living will not be imperiled by the award requested and consent to the allowance of it, the aim of protection of the employee pales in significance in resolving the issue of reasonableness of the fee request.

■ From a consideration of the enumerated statutory factors in the record before us, we are compelled to conclude the fee awarded by the Commissioner was not adequate but rather that it was arbitrary and unwarranted by the evidence. Moreover, after considering all the evidence, we conclude the requested fee was reasonable.[4]

■ 2. We next must resolve the issue whether Minn.Stat. § 176.081, subd. 7 (1980)[5] requires respondent-employer to pay the formula of the employee's attorney fees where, as here, the attorney representation of the employee commenced prior to the subdivision's effective date. The em-

---

**3.** During the litigation of the initial claim, the Workers' Compensation Court of Appeals panel informed the parties by letter that:

> In view of the volume of the evidence and the complexity of the issues, we wish to advise that it will be many months before this matter can be thoroughly studied by the Court and a decision rendered.

In his memorandum, the Commissioner acknowledged the case involved "complex legal issues." Finally, this court's opinion and the dissents thereto in *Kahn v. State,* 289 N.W.2d 737 (Minn.1980), clearly demonstrates the number of "close" and novel issues.

**4.** Although we have previously indicated that we are reluctant to set the exact amount of fees to be awarded in any compensation case, *Rock v. Bloomington School District # 271,* 269 N.W.2d 360, 362 (Minn.1978), after examining all of the evidence bearing on the factors set forth in section 176.081, subd. 5(d), we did say in *Saari v. McFarland,* 319 N.W.2d 706, 709 (Minn.1982), that the attorney fees there requested were reasonable. We apply the same analysis here as we did there.

**5.** Minn.Stat. § 176.081, subd. 7 (1980), insofar as relevant, provides:

> If the employer or insurer shall * * * resist unsuccessfully the payment of compensation or medical expenses, and the injured person shall have employed an attorney at law, who successfully procures payment on behalf of the employee, the compensation judge, commissioner of the department of labor and industry, or the workers' compensation court of appeals upon application, upon application, shall award to the employee against the insurer or self-insured employer or uninsured employer, in addition to the compensation benefits paid or awarded to the employee, an amount equal to 25 percent of that portion of the attorney's fee which has been awarded pursuant to this section that is in excess of $250.

Prior to the effective date of section 176.081, subd. 7, there was no similar statutory provision regarding fees. The statute was added by 1975 Minn.Laws c. 359, § 7.

ployee was injured on June 8, 1973; the representation of Mrs. Kahn by the Peterson firm commenced in February 1975; the effective date of section 176.081, subd. 7 was August 1, 1975.[6]

The employee characterizes section 176.-081, subd. 7 as being "procedural" and contends it is to be retroactively applied in this case. The employer, on the other hand, asserts the section is inapplicable since the Peterson firm's representation of employee commenced prior to the effective date of the statute. Moreover, it argues that it should be applicable only to the injuries occurring after its effective date, and that, in effect, since this is a substantive law, it is not retroactive. The Commissioner held the amendment to be substantive and, therefore, not retroactive.

In our view, whether section 176.081, subd. 7 is considered to be "procedural" or "substantive" is irrelevant. *Chapman v. Davis,* 233 Minn. 62, 45 N.W.2d 822 (1951). Minn.Stat. § 645.31 (1980) provides that new provisions in a statute shall be construed as effective only from the date when the amendment became effective. Moreover, Minn.Stat. § 645.21 (1980) provides that "[n]o law shall be construed to be retroactive unless clearly and manifestly so intended by the legislature." The effective date of section 176.081, subd. 7 was August 1, 1975. The section was a new procedure in the statute. Clearly, the legislature did not manifest that the statute was to be retroactively applied. Therefore, the Commissioner arrived at the right conclusion with the result that the time of injury governs. *Boltz v. Armour Agricultural Chemical Co.,* 269 Minn. 482, 486, 131 N.W.2d 624, 627–28 (1964).

Section 176.081, subd. 7 purports to impose new burdens upon an employer or its insurer to pay a portion of the employee's attorney fees if it unsuccessfully resists the payment of compensation. In this case, the employer had no opportunity to weigh those possible additional burdens in making the decision whether or not to file a denial of liability or to resist Mrs. Kahn's claim. In the absence of a clear legislative mandate that an employer-insurer should pay additional "compensation" without having had that opportunity at the outset of the proceeding, we adhere to the cited rule that the law applicable is that which was in effect on the date of injury.

We remand to the Commissioner for the entry of an order awarding to employee's attorney the fees requested and proved in the additional amount of $68,217.[7]

Affirmed in part, reversed in part and remanded.

---

6. Since no other effective date was stated in 1975 Minn.Laws c. 359, § 7, it became effective August 1, 1975. Minn.Stat. § 645.02 (1980).

7. We note that the employer is holding $58,-522.09 pending final determination of the attorney fees. The Commissioner may structure provisions for the payment of the remainder of the fees.