David W. MACK, Relator,

v.

CITY OF MINNEAPOLIS, Self-Insured, Respondent,

and

William L. YOUNG, Relator,

v.

MINNEAPOLIS MOLINE COMPANY/WHITE FARM EQUIPMENT COMPANY, Self-Insured, Respondent,

and

State Treasurer, Custodian of The Special Compensation Fund, Respondent.

Nos. C0–82–357, C3–82–658.

Supreme Court of Minnesota.

May 6, 1983.

Schermer, Schwappach, Borkon & Ramstead, John D. Mariani and Barbara L. Heck, Minneapolis, for Mack C0–82–357.

Butts & Sandberg, David Sandberg and James F. Schneider, Forest Lake, for Young C3–82–658.

Robert J. Alfton, City Atty., and J. David Abramson, Asst. City Atty., Minneapolis, for City of Minneapolis.

James A. O'Neal, Minneapolis, for Minneapolis Moline Co./White Farm Equipment Co.

Hubert H. Humphrey III, Atty. Gen., and Winston Ehlmann, Asst. Atty. Gen., St. Paul, for State Treasurer, Custodian of the Sp. Compensation Fund.

Faegre & Benson, John H. Hinderaker and Richard T. Thomson, Minneapolis, amicus curiae for American Ins. Ass'n, Alliance of American Insurers, Ins. Federation of Minnesota and Nat. Ass'n of Independent Insurers.

PETERSON, Justice.

The issues common to these consolidated appeals are the adequacy of attorney fees allowed to the employees' attorneys and the constitutionality of Minn.Stat. § 176.081 (1982). Other issues involve the construction of sections 176.081, subd. 7, and 176.-521, subds. 2, 2a. The facts in each case may be briefly stated.

<u>Mack v. City of Minneapolis</u> (Case No. *C0–82–357*)

David W. Mack, a police officer for the Minneapolis Police Department, was shot while executing a search warrant, resulting in severe anoxic brain damage which left him paralyzed. The facts are detailed in *State v. Housley,* 322 N.W.2d 746 (Minn. 1982).

In February 1980, attorney John D. Mariani was retained by Mack's wife to assert a claim for workers' compensation benefits. The retainer agreement provided for a 25% contingent fee. The city denied liability, asserting that Mack was "brain dead," and

therefore no temporary or permanent disability benefits were payable.

At trial Mariani adduced evidence that Mack was in a "persistent vegetative state," which was not brain death. The parties also disputed whether the injury to the brain was the sole compensable injury, or whether loss of each function controlled by the brain was compensable. The compensation judge, following a 2-day trial, made findings of fact that Mack was not brain dead and was entitled to disability benefits, that loss of each function was compensable, and that simultaneous injury compensation was payable. Mack was awarded benefits of $541,835. The judge also ordered payment to Mariani of $5,000 as attorney fees, the maximum that a compensation judge could order at that time.

On appeal to the court of appeals, the total benefits payable to Mack were increased to $712,013. Mariani was awarded $450 attorney fees of in connection with the appeal. We denied the city's petition for a writ of certiorari to review the award, because the petition was untimely.

Mariani thereafter filed an application for excess attorney fees, in the additional amount of $80,000. His petition itemized 143¾ hours of time devoted to the case. The court of appeals referred the matter to another compensation judge, who had not presided over the compensation hearing. At a hearing held before that judge, Mariani testified to the services he performed relative to the case. The petition had not asked for partial reimbursement of excess attorney fees; during the hearing, however, the compensation judge asked Mariani if he was seeking such reimbursement, and he replied that he was. Mariani was awarded fees of $20,000, but his request for partial reimbursement by the employer was denied. Mariani obtained a writ of certiorari; he challenges the adequacy of the attorney fees and denial of partial reimbursement.[1]

Young v. Minneapolis Moline Company, et al. *(Case No. C3–82–658)*

William L. Young injured his back in 1952, while employed by the Minneapolis Moline Company. He received compensation, including payment for 30% permanent partial disability of the back. Young ceased working in 1971, due to his back condition.

In July 1979, attorney David C. Sandberg was retained by Young. The retainer provided for a 25% contingent fee. Sandberg filed a claim petition for permanent total disability benefits from and after 1971 and supplementary benefits. Minneapolis Moline filed an answer denying Young was permanently disabled and alleging the injuries were sustained in automobile accidents in 1968, 1970, 1976, and 1979, in which Young had been involved.

In March 1982, Young, Minneapolis Moline, and the Custodian of the Special Compensation Fund signed a settlement agreement under which Young was to receive about $12,000 in a lump sum payment from Minneapolis Moline for temporary total disability; the special fund agreed to pay accrued supplementary benefits of $34,651 and continuing supplementary benefits from that date. The agreement provided that Sandberg was to receive $10,000 in attorney fees.

Sandberg petitioned the court of appeals for attorney fees of $10,000 and costs of $253.55. The petition itemized 179.3–204.3 hours of billable time and discussed the difficulties of proving causation due to the prior accidents.

The compensation judge issued an order approving the settlement. He cited Minn. Stat. § 176.521, subd. 2a (1982), under which a settlement agreement is conclusively presumed to be reasonable, fair, and in conformity with chapter 176, where all parties are represented by counsel. The judge ordered that Sandberg be awarded attorney fees of $2,511.09. The court of appeals amended the order, stating that the reasonable value of Sandberg's services was $7,511.09. Sandberg obtained a writ of certiorari; he argues that the award was inad-

---

1. Mariani gave notice to the attorney general that he intended to challenge the constitutional-

ity of Minn.Stat. § 176.081 (1982); the attorney general declined to intervene.

equate, that the court misinterpreted section 176.521, subd. 2a, and that the restrictions on attorney fees contained in section 176.081 were unconstitutional.

■ 1. The first issue, raised in the *Mack* case, is whether section 176.081, subd. 7, required the city to pay partial reimbursement for excess attorney fees awarded under subdivision 2 of that section.

Under the law applicable to this case at the time of trial, a compensation judge had authority to award up to $5,000 as attorney fees to counsel who obtained workers' compensation awards for their injured clients. Minn.Stat. § 176.081, subd. 1 (1980).[2] Attorney fees in excess of that amount could be granted only upon application to the court of appeals. Section 176.081, subd. 2. The employer may be required to reimburse an injured employee for a portion of his attorney fees under the provisions of section 176.081, subd. 7:

> If the employer or insurer shall file a denial of liability, * * * or shall otherwise unsuccessfully resist the payment of compensation or medical expenses, and the injured person shall have employed an attorney at law, who successfully procures payment on behalf of the employee, * * * the court of appeals upon appeal, upon application, shall award to the employee against the insurer or self-employed employer, or uninsured employer, in addition to the compensation benefits paid or awarded to the employee, an amount equal to 25 percent of that portion of the attorneys fees which has been awarded pursuant to this section that is in excess of $250.

Minn.Stat. § 176.081, subd. 7 (1982).

Mariani contends that once the court of appeals determined he was entitled to $20,000 additional attorney fees, the foregoing statute required the court to order the city to pay 25% of that amount less $250. The compensation judge who awarded the first $5,000 in fees ordered the city to pay $1,187.50 (25% of $5,000 minus $250). The city argues to the contrary that subdivision 7 applies only to fees awarded pursuant to subdivision 1.[3]

We hold that where, as here, the conditions of subdivision 7 are met, such partial reimbursement of excess attorney fees is mandatory. The statutory language states that the court of appeals "shall award" to the employee partial reimbursement for attorney fees which were awarded "pursuant to this section." Under the provisions of Minn.Stat. § 645.44, subds. 1, 16 (1982), unless another intention clearly appears, the word "shall" is mandatory. By the phrase "pursuant to this section," the legislature apparently meant to refer to *all* subdivisions within the section, since if only subdivision 1 was intended, the language of the statute could simply have read "pursuant to subdivision 1." Therefore, partial reimbursement should have been ordered by the court of appeals; its decision to the contrary is reversed. As we stated in *Graber v. Peter Lametti Construction Co.,* 293 Minn. 24, 29, 197 N.W.2d 443, 447 (1972), we are "not at liberty to construe statutory language that is precise and unambiguous."

It may well be that the statute deters good faith defenses of doubtful claims and further contributes to the high cost of workers' compensation insurance. The legislature presumably was aware of this possibility, but determined that requiring partial reimbursement was nevertheless appropriate where an employer's denial of a claim results in an employee being obliged to retain counsel to obtain payment. It is for the legislature, and not this court, to strike the balance between these competing concerns.

---

**2.** The statute has since been amended to raise the amount to $6,500. Minn.Stat. § 176.081, subd. 1 (1982).

**3.** The city also argues that by not requesting partial reimbursement until the issue was raised by the compensation judge, Mack waived his right to reimbursement. The city, however, was given ample time after the hearing to prepare a memorandum to the compensation judge on the issue. We think, in these circumstances, that a claim of waiver is not properly invoked. The city does not contend that it was prejudiced by failure to make the claim in the original petition.

2. The second issue, raised by *Young,* is whether, in light of Minn.Stat. § 176.521, subds. 2, 2a (1982), the court of appeals has power to review and set aside awards of attorney fees which have been stipulated to in a settlement agreement negotiated and signed by the employee, employer, and Custodian of the Special Compensation Fund, all of whom were represented by counsel.

Section 521 of the statute, as amended in 1981, provides:

> Subd. 2. Settlements shall be approved only where the terms conform to this chapter.
>
> The division, a compensation judge, the workers' compensation court of appeals, and the district court shall exercise discretion in approving or disapproving a proposed settlement.
>
> The parties to the agreement of settlement have the burden of proving that the settlement is reasonable, fair, and in conformity with this chapter. A settlement agreement where [all parties] in the matter are represented by an attorney shall be *conclusively presumed* to be reasonable, fair, and in conformity with this chapter.
>
> Subd. 2a. When a settlement case is not subject to approval, upon receipt of the stipulation for settlement, a compensation judge or a settlement judge shall immediately sign the award and file it with the commissioner. Payment pursuant to the award shall be made within 14

days after it is filed with the commissioner.

(Emphasis added.) Minn.Stat. § 176.521, subds. 2, 2a (1982). Prior to the 1981 amendments, subdivision 2a did not exist, and the presumption in subdivision 2 was not stated to be conclusive. Thus, where the division or court of appeals could point to evidence casting doubt on the reasonableness, fairness, or conformity to the statute, the presumption was negated, and the parties bore the burden of proof. *See* Ben-Anav, *Workers' Compensation Amendments of the 1979 Minnesota Legislature,* 6 Wm. Mitchell L.Rev. 743, 779–80 (1980). The 1981 amendments were evidently intended to require the commission to approve settlements agreed to by parties represented by counsel; subdivision 2a was to govern those cases.

The compensation judge ruled that the conclusive presumption of the amended statute applied, but that, even as amended, the statute did not require him to approve the attorney fees provisions of the settlement.

■ Sound policy reasons support the view that statutory presumption for approval of settlement agreements does not apply to provisions for attorney fees. We hold that the court of appeals has discretion in determining the reasonableness of attorney fees notwithstanding a stipulation for settlement which undertakes to fix attorney fees.[4] First, in the negotiation of settle-

---

4. We do not, in so holding, reach any issue with respect to whether the 1981 amendment to section 176.521, subd. 2, and the addition of subd. 2a is effective with respect to settlements of claims for injuries occurring prior to January 15, 1982. Prior to issuance of our first opinion, now withdrawn and this opinion substituted therefor, none of the parties provided us with evidence of legislative intent, and our own independent research of the proceedings of the hurried 1981 3rd Special Session disclosed none. However, on an unopposed petition for rehearing for the sole purpose of clarifying expressions in our original opinion that absent explicit declaration of legislative intent the statute was not retroactive to the date of injury, we have now been afforded affidavits from Steve Keefe, Commissioner of the Department of Labor and Industry, and Duane R. Harves, Chief Hearing Examiner of the Office of Administra-

tive Hearings (OAH), supportive of such legislative intent in the context of burdensome delay in the payment of stipulated benefits pending review by compensation judges. These administrative officials were privy to the drafting of the bill presented to the legislature. Mr. Harves had assembled data concerning the many settlements for which payments were being delayed and recommended a procedural change: that the prior rebuttable presumption be changed to a conclusive presumption, to be effective immediately. After consultation with members of the legislature, representatives of the AFL–CIO, employers and insurers, the Minnesota Trial Lawyers Association, and staff counsel of the Senate, the amendments were drafted. In the first 6 months of FY 1982, the department and OAH issued 1,508 awards on stipulation, following prior review, for an aver-

ments of workers' compensation claims, the interests of clients and responsible attorneys inherently coincide. In the setting of fees for that representation, however, the client in effect is not represented by counsel, and the interests do not so coincide. Attorneys, of course, are entitled to substantial fees for substantial professional service performed, but there could be situations where an attorney might negotiate an excessive fee with the client. Given general public awareness of the contingent fee arrangement, moreover, many clients may simply assume they must pay the attorney a specified percentage. Requiring approval of attorney fees by the court of appeals is a workable means of protecting the interests of clients.

Second, section 176.081 contains very detailed provisions which govern a very specific topic—payment of attorney fees in a workers' compensation context. Courts are to presume the legislature intends the entire statute to be effective, Minn.Stat. § 645.17(2) (1982), and, therefore, we cannot narrowly focus on Minn.Stat. § 176.521 alone. To hold that section 176.081 does not apply where the parties stipulate a settlement would greatly reduce the effect of the section. Furthermore, it would seem directly contrary to the statement in section 176.081, subd. 3, that "[t]he workers' compensation court of appeals shall have the authority to raise the question of the issue of the attorney fees at any time upon its own motion and shall have continuing jurisdiction over attorney fees," and in subdivision 5 that "[n]o attorney-client fee contract or arrangement is binding in any workers' compensation matter." This language implies the legislature did not intend the statutory presumptions to apply to attorney fees.

3. The third issue, common to both cases, is whether the awards of attorney fees were arbitrary and unsupported by the evidence. Both employees' attorneys ask this court to raise the amount of fees awarded to them. Mariani was granted a total of $25,450; he seeks $85,000. Sandberg was granted $7,500; he seeks $10,000 as per the settlement stipulation.

Minn.Stat. § 176.081, subd. 5 (1982), details the principles which are to be applied in determining the reasonable value of attorney fees arising out of a workers' compensation claim. These principles have been reviewed in several recent opinions. *Kahn v. State of Minnesota, University of Minnesota,* 327 N.W.2d 21 (Minn.1982); *Minogue v. City of St. Paul,* 320 N.W.2d 90 (Minn.1982); *Saari v. McFarland,* 319 N.W.2d 706 (Minn.1982); *Matter of Award of Attorney's Fees,* 269 N.W.2d 360 (Minn. 1978). Two policies behind the statute have been noted: (1) protecting compensation claimants from excessive legal fees which might otherwise severely deplete funds badly needed by the employee and his or her dependents; and (2) insuring that attorneys who represent claimants will receive reasonable compensation, so that competent counsel will be available to injured employees. *Kahn,* 327 N.W.2d at 24. To insure proper consideration of these factors, and to provide an adequate basis for appellate review, we have stressed the requirement that the court of appeals detail findings with respect to each factor.[5] The findings by the compensation court were inadequate in the two instant cases. In *Mack,* no findings were made, and the memorandum simply states: "[Mariani's request for $85,000] is determined to be excessive and unreason-

age of 263.3 per month; in the 11 months after enactment of the amendment, during which stipulations were conclusively presumed reasonable and fair without review, 4,516 orders of approval were issued, for an average of 410.5 per month. The average length of time for the issuance of such orders was reduced from 43.- 47 days to 3.7 days. There can be no doubt that, pursuant to Minn.Stat. § 176.421, subd. 1 (1982), orders of settlement from which no appeal was taken within 30 days are final. Since

the observations in this footnote are dictum expressed in a non-adversarial setting, it would be well for the administrative agencies promptly to seek explicit clarification by the legislature.

**5.** We recognize that the three most recent cases were released after the instant cases were decided, and hence the court of appeals did not have the benefit of those opinions.

able. Taking into consideration all guidelines set forth in M.S. 176.081, Subd. 5 and particularly those factors set forth in M.S. 176.081, Subd. 5(d), aggregate fees * * * in the sum of $25,000 are deemed fair and reasonable." In *Young*, the court of appeals justified its decision to raise Sandberg's fee from $2,511 to $7,511, simply stating: "We determine that the time spent by Mr. Sandberg, the results obtained, his expertise in the field, are supportive of our conclusion that he is entitled to additional fees." We therefore remand both cases to the court of appeals to make adequate findings of fact. We express no opinion as to what award of fees would be reasonable.

4. The final issue, raised by both relators, is whether the restrictions pertaining to attorney fees contained in Minn.Stat. § 176.081 are consistent with the right to contract guaranteed by the due process clauses of the state and federal constitutions and the separation of powers clause of the state constitution.

### A. Right to Contract

Relators argue that the provisions of Minn.Stat. § 176.081 (1982) limiting the right of employees to contract with attorneys as to the costs of representation render the statute unconstitutional under the state and federal due process clauses. U.S. Const. amend. V, XIV; Minn. Const. art. 1, § 7. They cite *Federal Distillers, Inc. v. State*, 304 Minn. 28, 229 N.W.2d 144 (1975), in which the court said that "it is well established that the freedom to contract with respect to one's property and in the conduct of a lawful business to select the party with whom one chooses to do so is a part of the liberty protected by the due process clause of the State and Federal Constitutions." 304 Minn. at 45, 299 N.W.2d at 157.

Relators acknowledge that the court in 1923 upheld the constitutionality of the predecessor statute to Minn.Stat. § 176.081, in *Sarja v. Pittsburg Steel Ore Co.*, 154 Minn. 217, 191 N.W. 742 (1923), *cert. denied sub nom., Swanson v. Sarja*, 262 U.S. 754, 43 S.Ct. 702, 67 L.Ed. 1216, *writ of error dismissed*, 263 U.S. 685, 44 S.Ct. 180, 68 L.Ed. 505 (1925). The statute construed there contained almost identical language to what is now the first sentence of Minn.Stat. § 176.081, subd. 1 (1980). The appellant there had argued that the limitation on attorney fees would result in less competent counsel for employees. We rejected the argument, noting there was no necessary connection between attorney competence and compensation, and stressed that the legislature could rationally differentiate between employers and employees because the latter were often in precarious financial situations, and the bulk of the compensation benefits were intended to aid employees, not their attorneys.

Relators argue that *Sarja* is not controlling, because of extensive amendments in 1975. Specifically, relators challenge (1) the $5,000 limit on the authority of the compensation judge to award attorney fees; (2) the two-tier system for setting attorney fees; and (3) the failure of the statute to include existence of a contingent fee arrangement as a factor to be considered in determining the reasonableness of a fee.

These objections must be analyzed under three tests. As *Federal Distillers* stated: "Where an economic regulation is enacted, the guarantee of due process demands only (1) that the act serve to promote a public purpose; (2) that it not be an unreasonable, arbitrary or capricious interference; and (3) that the means chosen bear rational relation to the public purpose sought to be served." 304 Minn. at 46, 229 N.W.2d at 158. Relators concede that the first requirement is met.

Relators argue that the limitations on attorney fees are unreasonable and arbitrary because there is no basis for the dollar limits and percentages in section 176.081, subd. 1. Relators claim these figures do not represent an average or median amount of fees awarded. They argue that the two-tier system is unreasonable because although the statute states that the determination of attorney fees must be done with the same care as any other fact question in

the matter,[6] the trial judge who knows most about the conduct of the case is not allowed to decide excess fees; instead, an appellate court without firsthand knowledge must determine reasonable fees. Finally, they argue that the parties' expectations and evaluation of a reasonable fee are expressed in the retainer agreement, which should therefore be a factor considered in determining reasonableness. Relators also argue that no rational relation exists between the statute's ends and its means, since (1) there is no absolute limit on attorney fees which a client might be charged, and, (2) on the other hand, attorneys may not be adequately compensated, so that clients ultimately will receive less competent counsel.

■ Every legislative enactment "comes to the court with a presumption in favor of its constitutionality * * *. The burden of proof is on the challenging parties to show beyond a reasonable doubt that the act violates some particular constitutional provision." *Federal Distillers,* 304 Minn. at 39, 229 N.W.2d at 154 (citations omitted). In our view, relators have failed to meet this high standard. We turn now to a brief discussion of relator's specific arguments.

First, as to the reasonableness of the percentage and dollar limitations, the legislature could reasonably believe that 20–25% is a fair contingent fee for handling compensation matters of moderate size. The legislature could reasonably conclude that in the usual case a $5,000 attorney fee would serve the dual purpose of maximizing the employees' net benefit and minimizing the employer's costs, while at the same time providing attorneys with sufficient incentive to undertake workers' compensation cases. In cases where a large fee is warranted, it is not foreclosed; the court of appeals may grant a larger fee.

Second, as to the reasonableness of the two-tier level of review, the requirement that excess fees be determined by the court of appeals may have stemmed from a desire

of the legislature to insure uniformity in the setting of such fees. Furthermore, if such fees are considered to be exceptional, then the legislature may have desired a stronger showing of eligibility to be made, by requiring them to be justified before an independent tribunal.

Third, as to whether existence of a contingent fee arrangement is a factor that should be considered, we believe the 1975 amendments were not responsible for exclusion of that factor from consideration. In *Blair v. Village of Coleraine,* 180 Minn. 388, 231 N.W. 193 (1930), an attorney appealed an award of attorney fees he considered inadequate. We construed the workers' compensation statute and stated, "These provisions of the compensation law render the contract between Blair and his attorney of no force and effect." 180 Minn. at 389, 231 N.W. at 193. *Sarja, supra,* was cited in support of this proposition. Chief Justice Wilson dissented, believing as relators do, that "the fact [Blair's attorney] was working on a contingent fee was not duly appreciated." 180 Minn. at 390, 231 N.W. 193. The other members of the court by implication found that this factor was not relevant. Thus, contrary to relator's argument, failure to consider the terms of a contingent fee arrangement does not stem from the 1975 amendments; rather, it can be traced to longstanding decisions of this court.

■ The ends-means rational relation attacks also fail. A statute is not unconstitutional merely because it does not assure complete amelioration of the evil it addresses; it is sufficient if the statute bears a reasonable relationship to a legitimate public purpose. *See Williamson v. Lee Optical of Oklahoma, Inc.,* 348 U.S. 483, 487, 75 S.Ct. 461, 464, 99 L.Ed. 563 (1955); *Minnesota v. Clover Leaf Creamery Co.,* 449 U.S. 456, 466, 101 S.Ct. 715, 725, 66 L.Ed.2d 659 (1981). The legislature is not compelled to prohibit all evils or none; it may hit at an abuse which it has found even though it fails to strike at another. *Federal Distillers,* 304 Minn. at 43, 229 N.W.2d at 156. Thus, the protections afforded injured em-

6. Minn.Stat. § 176.081, subd. 5 (1982).

ployees by Minn.Stat. § 176.081 are not invalid merely because an additional protection—an absolute ceiling on fees—was not included.[7]

To the argument that the statute fails to meet its goal of insuring that employees have competent counsel, two responses are appropriate. First, the statute had several goals, one of which was to protect employees from excessive fees. The limitations in Minn.Stat. § 176.081 certainly are closely related to that goal. Second, if the fees set are in fact unreasonably low, the statute itself has been violated, since it requires that reasonable fees be set.

### B. Separation of Powers

■ Relators, in an argument not heretofore made to this court, argue that placing limits on attorney fees is inherently within the province of the judiciary. As a result, the act of the legislature imposing limits and allowing an administrative agency to set fees is claimed to be violative of the separation of powers guaranteed by Minn. Const. art. 3, § 1.

Relators place strong reliance on *Sharood v. Hatfield,* 296 Minn. 416, 210 N.W.2d 275 (1973), in which the legislature purported to amend the rules of professional responsibility to require the Board of Law Examiners to use certain tests and to transfer attorney registration fees from a special trust account—which the legislature had previously assured would "never cancel"—to the general fund. We invalidated the statute on the grounds it transgressed the principle of separation of powers. *Inter alia,* we stated that "the making of regulations and rules governing the legal profession falls squarely within the judicial power thus exclusively reserved to the court." 296 Minn. at 423, 210 N.W.2d 275. However, our opinion did not specifically advert to attorney fees paid by clients.

In *Hollister v. Ulvi,* 199 Minn. 269, 271 N.W. 493 (1937), the validity of a contingent fee retainer for lobbying services was challenged. We noted our "plenary and summary authority to control and protect the attorneys appearing therein, including as well their relations to suitors, to the end that no injustice be done and no overreaching by counsel of his client take place." 199 Minn. at 277, 271 N.W. at 497.

Relators also argue that adoption of the Code of Professional Responsibility, especially DR 2–106(A), which prohibits lawyers from collecting excessive fees, indicates our control over attorney fees. The 1975 amendments to Minn.Stat. § 176.081, relators argue, constitute a significant inroad upon our authority over the fees charged by attorneys, which we should not hesitate to overturn.

We believe these cases indicate that not all conceivable regulation of attorney fees would be constitutionally permissible. Nevertheless, we decline to hold that the present statutory scheme regulating fees is unconstitutional.

In our view, final authority over attorney fees is not given to a nonjudicial body, since ultimately we can review all attorney fees decisions. In *State v. District Court of Meeker County,* 128 Minn. 221, 150 N.W. 623 (1915), we held that the workers' compensation statute, which did not allow appeals of right, did not violate the separation of powers clause where review by certiorari was available. The later, compulsory form of the act was challenged on separation of powers ground in *Breimhorst v. Beckman,* 227 Minn. 409, 35 N.W.2d 719 (1949). We there held that quasi-judicial functions assigned to the workers' compensation commission did not encroach on the judicial branch, stating:

In the exercise of the police power, the vesting by the legislature in the industrial commission of quasi-judicial powers—inclusive of the power to determine facts and apply the law thereto in employment-accident controversies—is not in violation of state constitutional provisions for the

---

**7.** We do not by this recital of appellants' position intimate a view as to the constitutionality of such a provision.

division of the powers of government or for the vesting of the judicial power in the courts, as long as the commission's awards and determinations are not only subject to review by certiorari, but lack judicial finality in not being enforceable by execution or other process in the absence of a binding judgment entered thereon by a duly established court.

227 Minn. at 433, 35 N.W.2d at 734. By the same reasoning, power in the commission to set attorney fees is constitutionally permissible, because these awards are reviewable by this court.

Moreover, we note nearly uniform practice throughout the country of assigning responsibility for attorney fees to compensation commissions. Recommendation 6.15, *The Report of the National Commission on State Workmen's Compensation Laws* (1972), stated: "We recommend that attorneys' fees for all parties be reported for each case, and that the fees be regulated under the rulemaking authority of the workmen's compensation administrator." *The National Commission's Compendium on Workmen's Compensation* reported in 1973:

Almost all jurisdictions now in some way regulate the amount of the workers' attorney's fee * * *. A statute or administrative regulation may prescribe the maximum dollar or percentage amount which can be charged, may fix the amount of the fee on a case by case basis; may require approval of all fee arrangements; or may regulate the fee only when a controversy arises * * *. In order to assure compliance with these provisions, the statute may provide that no claim or charge for legal services is enforceable or valid unless it has been set in accordance with the prescribed statutory methods or it may authorize criminal penalties against the attorney for entering into improper fee arrangements.

*Id.* at 206–09. Given this uniform approach, we decline to invoke the separation of powers as a basis for invalidating the statute.

Case No. C0–82–357 reversed in part and remanded; Case No. C3–82–658 affirmed in part and remanded.

Upon petition for rehearing to clarify part 2 of our opinion filed March 25, 1983, that opinion is withdrawn and this opinion substituted therefor. The petition for rehearing is denied.

TODD, Justice (concurring in part, dissenting in part.)

I concur in the result reached by the majority providing for a remand in the *Mack* case. I would note that in the opinion of this writer the present award of attorney fees is grossly inadequate.

I dissent in the *Young* matter. The injured employee has on two occasions signed a stipulation approving a lump sum fee of $10,000 for his attorney. The referee allowed only $2,511.09 attorney fees. The Court of Appeals raised this amount to $7,511.09 but limited its payment to supplementary benefits occurring after July, 1981, relying on Minn.Stat. § 176.133 (1982). There is nothing in this section or any other section of the Workers' Compensation Act which requires this result. Here, the employee was awarded accrued supplemental benefits in a lump sum payment of $11,-555.45 for temporary total disability plus a lump sum payment of $34,651.45 for continuing supplementary benefits through February 26, 1982 and continuing benefits thereafter. The Court of Appeals, by refusing to pay the attorney in full, have reduced their value, since the fee has been earned but the attorney does not have the use of the funds. Based on the record in this case, an allowance of $10,000 attorney fees is very reasonable and should be paid to the attorney out of the lump sum payment to the employee amounting to $46,-206.90. I would so order without remanding the matter for further proceedings.

YETKA, Justice (dissenting).

I join in the dissent of Mr. Justice Todd.