Rebecca A. MANN, Respondent,

v.

UNITY MEDICAL CENTER/HEALTH CENTRAL, St. Paul Fire and Marine Insurance Company, HEMAR Service Corporation, U.S. Insurance Group, HEMAR Service Corporation, intervenor, Respondents,

and

Aetna Life and Casualty Company, intervenor, Relator,

and

Special Compensation Fund, Respondent.

No. Cl–89–178.

Supreme Court of Minnesota.

June 30, 1989.

Fitch, Johnson, Larson & Walsh, Philip B. Moosbrugger, Minneapolis, for Aetna Life and Cas. Co.

Curtis H. Foster, Mpls., for Rebecca Mann.

Richard Danehy, Overland Park, Kan., for Hemar Svc. Corp.

James K. Helling, St. Paul, for Unity Med. Ctr.

McCollum & Daly, Ltd., Robert L. McCollum, Bloomington, for Hemar Services Corp.

Victoria Oace, St. Paul, for Spec. Comp. Fund.

KEITH, Justice.

We review on certiorari a decision of the Workers' Compensation Court of Appeals affirming an award of attorney fees to be deducted, pursuant to *Edquist v. Browning–Ferris*, 380 N.W.2d 787 (Minn.1986), from the amount ordered as reimbursement to intervenor Aetna Life and Casualty for long-term disability benefits paid pending a determination of workers' compensation liability. We affirm.

On April 29, 1977, Rebecca Mann sustained a work-related lower back injury while employed by Unity Medical Center. Unity Medical and its workers' compensation liability insurer accepted liability and paid certain benefits as well as compensation for a 15% permanent partial disability to the back. The employee returned to employment in a sedentary clerical position with HEMAR Service Corporation. On

May 9, 1986, the employee became disabled by her back condition. HEMAR Service Corporation paid short term disability benefits to the employee from May 1986 through June 21, 1986; and Aetna Life paid long term disability benefits to the employee from December 8, 1986 through May 27, 1987. The employee filed a claim petition for workers' compensation benefits. Aetna Life and HEMAR petitioned for, and were granted, intervenor status.

Following a hearing on the claim petition, the compensation judge found that the employee's disability in 1986–87 was causally related to her 1977 back injury and awarded benefits to be paid by Unity Medical/St. Paul Fire. The compensation judge further found that HEMAR was entitled to be reimbursed in the amount of $963.45 for short term disability benefits (paid May–June 1986) and that Aetna was entitled to be reimbursed in the amount of $5,010 for long-term disability benefits (paid December 1986–May 1987). Finally, the compensation judge ordered that 20% of the amounts reimbursable to Aetna and HEMAR be deducted and paid to the employee's attorney pursuant to *Edquist*. Aetna appealed from that part of the compensation judge's order authorizing *Edquist* fees; and the Workers' Compensation Court of Appeals affirmed. This appeal followed.

The issue presented for review is similar to that in *Barnick v. Swift Eckrich, Inc.*, 442 N.W.2d 294 (Minn.1989). Aetna, like Blue Cross/Blue Shield in *Barnick*, contends *Johnson v. Blue Cross & Blue Shield of Minnesota*, 329 N.W.2d 49 (Minn. 1983), and not *Edquist*, applies to reimbursements for disability benefits. In support of this contention, Aetna refers to the

public policy rationale expressed in *Johnson* for refusing to obligate health insurers to share in the cost of collection.

First, the burden of economic loss in work-related injuries is to be put on industry, not the health insurer; and, second, so that the injured employee does not suffer while primary liability is being disputed, health carriers are expected to pay the bills until workers' compensation coverage is established. In return for the health carrier's undertaking this responsibility and to minimize the administrative cost of doing so, the health carrier is permitted to take a relatively passive role in the worker's compensation litigation. ·

329 N.W.2d at 52. Aetna points out that like health carriers represented by the *Johnson* case, Minn.Stat. § 176.191, subd. 3 (1988)[1] requires disability carriers to pay benefits; and Aetna maintains that the same public policy rationale for allowing *full* reimbursement without having to share that recovery with the employee applies equally to disability carriers.

Although Aetna's position has some appeal in terms of the policy considerations involved with Minn.Stat. § 176.191, subd. 3 (1980), we do not believe that Minn.Stat. § 176.191, subd. 3 (1980) was intended to regulate attorney fees in this situation. In *Johnson*, we turned to that provision in an attempt to ascertain a legislative intent in disallowing fees that were not recoverable under the general attorney fee provisions of Minn.Stat. § 176.081 (1980) or under the medical benefits expense provision of Minn. Stat. § 176.135 (1980). Unlike *Johnson*, or more recently, *Barnick*, attorney fees in this case are recoverable under Minn.Stat. § 176.081, subd. 1(a) (1988) which imposes

---

1. Minn.Stat. § 176.191, subd. 3 provides:

    If a dispute exists as to whether an employee's injury is compensable under this chapter and the employee is otherwise covered by an insurer pursuant to Chapter 62A, 62C and 62D, that insurer shall pay any medical costs incurred by the employee for the injury up to the limits of the applicable coverage and shall make any disability payments otherwise payable by the insurer in the absence of or in addition to workers' compensation liability. If the injury is subsequently determined to be

    compensable pursuant to this chapter, the workers' compensation insurer shall be ordered to reimburse the insurer that made the payments for all payments made under this subdivision by the insurer, including interest at a rate of 12% a year. If a payment pursuant to this subdivision exceeds the reasonable value permitted by sections 176.135 and 176.-136, the provider shall reimburse the workers' compensation insurer for all the excess as provided by rules promulgated by the commissioner.

a lien against reimbursements to those entities that (as Aetna states) have essentially "prepaid" that portion of workers' compensation benefits awarded to the employee. *Edquist,* 380 N.W.2d at 789–90. Bearing in mind that Minn.Stat. § 176.081 (1980) was designed to further the "public policy of this state that injured employees have access to representation by competent counsel knowledgeable in the intricacies of the workers' compensation law," [2] and also in view of Minn.Stat. § 176.135 (1988) which provides for reasonable attorney fees in medical benefits disputes, we believe that reducing those benefits which "qualify" as compensation from which attorney fees can be paid in this case would frustrate this policy. We therefore affirm the award of benefits.[3]

Affirmed.

COYNE, Justice (dissenting).

I respectfully dissent. As we observed in *Johnson v. Blue Cross & Blue Shield,* 329 N.W.2d 49 (Minn.1983), Minn.Stat. § 176.191, subd. 3 (1988), imposes on a health or disability insurer the obligation to make medical or disability payments whenever there is a dispute about the compensability of an employee's injury. *Id.* at 52. That statute goes on to provide that "[i]f the injury is subsequently determined to be compensable pursuant to [the Worker's Compensation Act], the workers' compensation insurer shall be ordered to reimburse the [health] insurer that made the payments for all payments made under this subdivision by the [health] insurer, including interest at a rate of 12 percent a year." Minn.Stat. § 176.191, subd. 3 (1988).

In *Johnson* we went on to point out that the statute and case law disclose two policy considerations: first, industry, not health or disability insurers, is to bear the burden of economic loss from work-related injuries; and second, health and disability insurers must make payments while primary liability is disputed so that the injured employee does not suffer. *Johnson,* 329 N.W. 2d at 52. In return for the imposition of this immediate responsibility on the health or disability carrier, however, section 176.-191, subd. 3, directly protects the health and disability insurer's interest by requiring the inclusion of an order of reimbursement in any determination that the injury is compensable under the Worker's Compensation Act.

Under this statutory plan, the passivity of the health or disability insurer's part in the workers' compensation proceedings is assured. It need not demonstrate a common law right of subrogation, and while it must make its presence known in the workers' compensation proceeding, the right to reimbursement is guaranteed by the statute. Moreover, since the statute provides that the workers' compensation carrier shall be ordered to reimburse the health or disability insurer directly, that amount never becomes part of the "compensation awarded to the employee" within the meaning of Minn.Stat. § 176.081 (1988), which awards attorney fees.

It seems to me that the only rationale for the position adopted by the court in the *Johnson* case is the coordinated statutory structure for payment and reimbursement of medical and disability benefits without regard to the relative merits of the competing positions of workers' compensation carrier and health and disability insurers.

---

**2.** *Edquist,* 380 N.W.2d 789, *quoting Kahn v. State, University of Minnesota,* 327 N.W.2d 21, 24 (Minn.1982).

**3.** To the extent that this result may place disability carriers required to pay benefits under section 176.191 in a slightly different posture economically than the health carrier similarly obligated, we remind the carriers that the "fund from which the reimbursement is made comes into existence because of the attorney's efforts" in pursuing the employee's workers' compensation claim. *Edquist* 380 N.W.2d at 790. Disability carriers have no independent right to

initiate a claim for reimbursement, but can only intervene in a proceeding commenced by the employee. *Freeman v. Armour Food Company,* 380 N.W.2d 816, 820 (Minn.1986). With no incentive to pursue the workers' compensation claim, employees may elect to forego the claim, leaving the intervenor with nothing.

We recognize the dissent's concern that there are difficulties in reconciling this holding with that in *Johnson* and *Barnick,* but it is for the legislature to rectify any perceived inconsistency that results from the existing statutory provisions.

Unlike the intervening commissioner of department of economic security, claiming reimbursement for unemployment compensation paid an injured employee, *Edquist v. Browning–Ferris*, 380 N.W.2d 787 (Minn. 1986), a health or disability insurer has no obligation to demonstrate a common law right of subrogation. Neither, however, does a health or disability insurer have any discretion to refuse payment on the ground that primary liability rests on the workers' compensation carrier; the obligation is imposed on the health or disability insurer by statute.

In summary, then, I am unable to distinguish the claim pursuant to section 176.191, subd. 3, of the disability insurer from that of the health insurer. If the obligation imposed on the health insurer by statute insulates the health insurer from the obligation to pay attorney fees to the injured employee's attorney, I see no justification for depriving the disability insurer of the same immunity. In my opinion *Johnson* controls the disposition of this case, and we must either follow it or overrule it.

KELLEY, Justice (dissenting).

I join the dissent of Justice Coyne.