IN RE PETITION FOR INTEGRATION OF THE BAR OF MINNESOTA.[1]

December 17, 1943.

No. 33,217.

[1]Reported in 12 N. W. (2d) 515.

*Charles W. Briggs, John A. Burns, Bert McKasy, A. R. English,* and *Donald Holmes,* for petitioner.

*S. D. Catherwood, William E. MacGregor, I. K. Lewis, Raymond A. Scallen, Richard S. Felhaber, W. W. Gibson, Webster Earl Smith,* and *Donald F. Pratt,* Committee of Minnesota Bar Opposing Integration.

*Arnold L. Guesmer, Lewis Ward Martin, Walter L. Chapin, Ernest E. Watson,* and *O. N. Davies,* filed separate briefs opposing integration.

PER CURIAM.

This matter is before us on a petition of the Minnesota State Bar Association, through its Committee on Integration and its officers and in behalf of those lawyers of the state in favor of integration. The petition seeks an order of this court integrating the bar of Minnesota, and thereafter, if such order be made, such further orders, rules, and proceedings of this court as would be proper and necessary to effectuate integration and provide for the functioning of an integrated bar. The petition prays that such orders be made under the court's inherent power to regulate the bar. It recites the proceedings of the Minnesota State Bar Association with reference to this matter, including the resolutions adopted, the committees

appointed, the petitions circulated, the investigations made of various systems in other states, and the briefs prepared, and it submits therein a proposed form of organization which this court might set up if the petition be granted. The petition does not pray that this court require integration under the present Minnesota State Bar Association, but suggests retention, wherever possible, of the form of organization and regulations evolved by said association as a result of its years of operation and experience.

Petitions were circulated among the lawyers of the state seeking support of this procedure, and subsequently communications opposing integration were forwarded to them. Out of a total of 2,269 lawyers who voted on the matter, 1,725 were in favor of integration and 544 opposed thereto, while some 260 lawyers who signed the petition manifested no preference one way or the other. A great many did not vote on the proposition, although every effort was made to reach them and obtain an expression from them on the matter.

In this connection the exact number of attorneys in the state is uncertain. Petitioners contend that there are approximately 2,661, while those opposed to these proceedings contend that there are at least 3,200, and they support their contention by reference to the Martindale-Hubbell Law Directory. There is no evidence before the court on this matter, and hence the exact number of attorneys in the state cannot be determined in these proceedings.

Briefly summarized, the questions here to be determined are as follows:

(1) Does this court have jurisdiction to hear and determine this matter?

(2) Does it have inherent power to order integration of the bar?

(3) Would such an order be violative of the constitutional rights of individual members of the bar?

(4) Would such an order be for the best interests of the bar, the public, and in furtherance of the administration of justice?

At the outset it may be said that the court, in considering the questions presented, does not take the position that it is requested

by the petition to order all the lawyers of Minnesota who have been or may be admitted to the bar to join and pay dues to the Minnesota State Bar Association, or even to a similar organization. Rather, the question considered is whether this court possesses, and may exercise, the power to require all such lawyers, as officers of this court, to become members of a state-wide organization set up by this court, and, incidental thereto, to require individual lawyers to pay an annual fee to such an organization to carry on its work.

The first question to be considered is that of the court's jurisdiction to hear and determine the matter here presented. Closely allied to that question is the one of the court's inherent power to make the order prayed for, and hence these two questions will be considered together.

The supreme court of Minnesota was created by Minn. Const. art. 3, § 1, which provides:

"The powers of the government shall be divided into three distinct departments, the legislative, executive, and judicial; and no person or persons belonging to or constituting one of these departments shall exercise any of the powers properly belonging to either of the others, except in the instances expressly provided in this constitution."

and by art. 6, § 1, which provides:

"The judicial power of the state shall be vested in a supreme court, district courts, courts of probate, justices of the peace, and such other courts, inferior to the supreme court, as the legislature may from time to time establish by a two-thirds vote."

Art. 6, § 14, provides:

"Legal pleadings and proceedings in the courts of this state shall be under the direction of the legislature. The style of all process shall be, 'The State of Minnesota,' and all indictments shall conclude, 'against the peace and dignity of the state of Minnesota.' "

Thus, from the constitution, it is manifest that the three branches of government were intended to be separate and distinct. The

only power granted therein to the legislature insofar as the supreme court is concerned is that covered by art. 6, § 14, which relates solely to pleadings and procedure.

The supreme court is thereby made the final authority and last resort in the protection of the human, political, and property rights guaranteed by the constitution, and it was intended thereby to be at all times free from the dangers of encroachment either by the legislature or executive branches of the government.

The fundamental functions of the court are the administration of justice and the protection of the rights guaranteed by the constitution. To effectively perform such functions, as well as its other ordinary duties, it is essential that the court have the assistance and coöperation of an able, vigorous, and honorable bar. It follows that the court has not only the power, but the responsibility as well, to make any reasonable orders, rules, or regulations which will aid in bringing this about, and that the making of regulations and rules governing the legal profession falls squarely within the judicial power thus exclusively reserved to the court. In its past decisions this power has been recognized repeatedly as within the province of the court. Thus, in In re Greathouse, 189 Minn. 51, 55, 248 N. W. 735, 737, the principle is expressed as follows:

"The judicial power of this court has its origin in the constitution; but when the court came into existence it came with inherent powers. Such power is the right to protect itself, to enable it to administer justice whether any previous form of remedy has been granted or not. This same power authorizes the making of rules of practice."

Pursuant to these principles, at various times in the past we have exercised such power to suspend or to disbar attorneys from practice, In re Greathouse, 189 Minn. 51, 248 N. W. 735; to prohibit by injunction others not members of the bar from engaging in the unauthorized practice of law, In re Otterness, 181 Minn. 254, 232 N. W. 318, 73 A. L. R. 1319; to reject as unconstitutional statutes seeking to limit the power of this court in disbarment proceedings;

In re Tracy, 197 Minn. 35, 43, 266 N. W. 88, 267 N. W. 142; and to reject as unconstitutional statutes attempting to authorize admissions to the bar by legislative enactment, Cowern v. Nelson, 207 Minn. 642, 647, 290 N. W. 795.

Since the petition here under consideration seeks merely the promulgation of an order directly relating to and governing the conduct of the legal profession generally, we hold that the court has jurisdiction to hear the matter here presented, and, should it be determined that the order prayed for would further the administration of justice, that it has the inherent power to promulgate the same.

■ We hold further that the exercise of such power would not in any respect violate the constitutional rights of any lawyer already admitted to practice. The practice of law is not a property right guaranteed or protected by either the state or federal constitution. It is a privilege conferred on the individual by the court to further the administration of justice. Lawyers will agree that the administration of justice, the protection of the public, and the safeguarding of the rights guaranteed by the constitution outweigh the court's obligation to maintain the privilege accorded the individual lawyer in admitting him to the practice of law.

■ Having made clear our position on the foregoing questions, we now consider the propriety and expediency of exercising such power in the manner here requested. The fact that this inherent power is possessed by the court imposes upon it the responsibility of exercising it fairly and justly, and not in an arbitrary or capricious manner, or in any manner except to aid in the development of a strong and vigorous bar to assist the court in the performance of its functions.

Petitioners claim that the order prayed for, if granted, would raise the standards of the profession; eliminate the unfit, the dishonest, and the unethical; result in a fair standardization of minimum fees; eliminate encroachments on the legal profession by those not permitted to practice; and afford protection and recourse to those who might otherwise by reason of destitute circumstances

be unable to protect their legal or constitutional rights. If such results would follow, then unquestionably the order prayed for would result in the furtherance of the administration of justice, and be well within the province of the court.

If, on the other hand, as contended by those opposed to the petition, such an order would result in regimentation of the bar; in its control by small groups or cliques; and in the elimination of that independence of thought and action which has always characterized members of the legal profession, then it is equally clear that it would be inadvisable to grant the petition.

We feel that the beneficial results above set forth can be attained and the evils avoided only if the order prayed for receives the wholehearted support of a decided majority of the members of the bar, and if the articles and by-laws for such integrated bar are the result of the careful study and deliberation of such members as well as of this court.

An integrated bar must be a democratic, self-governing organization, the structure of which should be the result of the composite wisdom of representative members of the profession. At present a large segment of the profession is absent from the state either in the Armed Forces of the United States or otherwise engaged in furtherance of the prosecution of the war. Some of them have not had the opportunity of expressing their opinion on this matter. Others who may have expressed their opinion would be denied the opportunity of participating in the organization of the integrated bar if an order therefor were made at this time. For this court at this time to attempt to appoint a committee from the profession to formulate a proposed structure of an integrated bar would necessarily result in the exclusion from participation in such formulation of a large, active, and patriotic segment of the profession entitled to a voice in the proposal. The court must have regard for them, and, even though their number be small, they must be given the opportunity of expressing their convictions and of participating in organization work if an integrated bar should be ordered. See Integration of Bar Case, 244 Wis. 8, 11 N. W. (2d) 604.

.Accordingly, we deem it advisable to postpone our decision herein until the end of the present world conflict and until the lawyers in military service or defense work shall have returned to practice under normal conditions. We retain jurisdiction of the petition for such action as the court as it then may be composed shall determine, either upon its own motion, or upon the application of petitioners.

Jurisdiction retained in accordance with the opinion.

MR. JUSTICE PETERSON concurs in the result.