## PAULETTE B. HARRISON FOWNES AND OTHERS
## v. HUBBARD BROADCASTING, INC.

246 N. W. 2d 700.

October 22, 1976—No. 46185.

*Faegre & Benson, George D. McClintock, Lawrence C. Brown,* and *Jerry W. Snider,* for appellants.

*Leonard, Street & Deinard, Sidney Barrows, Melvin H. Siegel,* and *Lowell J. Noteboom,* for respondent.

Heard before Rogosheske, MacLaughlin, and Marsden, JJ., and considered and decided by the court en banc.

MacLaughlin, Justice.

Petitioners, minority shareholders in Hubbard Broadcasting, Inc., hereafter Hubbard, applied to the Hennepin County District Court for several forms of relief, including damages allegedly sustained by them in successfully petitioning for a writ of mandamus commanding Hubbard to permit them to inspect designated corporate records. The district court denied all such relief. The sole issue petitioners raise on appeal is whether the district court erred in ruling that the "damage" recoverable by a successful mandamus petitioner pursuant to Minn. St. 586.09[1] does not include reasonable attorneys fees and related costs and expenses. We affirm.

The present appeal had its genesis in a petition for alternative writ of mandamus filed by petitioners in Hennepin County District Court on October 18, 1973. Petitioners, as minority shareholders in Hubbard, sought to compel Hubbard to honor their demand to examine the share registers, books of account, and records of the proceedings of the shareholders and directors of Hubbard, and to make extracts therefrom, pursuant to Minn. St. 301.34, subd. 5, and the common law. Petitioners' alleged purposes in making the demand for inspection were all legally proper: To evaluate the shares of the minority interest, to evaluate the adequacy or inadequacy of investment return, to evaluate the adequacy or inadequacy of Hubbard management, to ascertain the remuneration and other benefits received by Hubbard's officers, to investigate whether or not there had been any abuse by the majority shareholders of their positions, and generally to permit petitioners to inform themselves about the affairs, business, and property of Hubbard. Hubbard filed an answer alleging that the demand for inspection was made for the improper purposes of compelling Hubbard to redeem petitioners' stock at an exorbitant price and go public.

---

[1] Minn. St. 586.09 provides: "If judgment is given for the plaintiff [in a mandamus action], he shall recover *the damage which he has sustained,* together with costs and disbursements * * *." (Italics supplied.)

On a motion by petitioners for judgment on the pleadings, treated as one for summary judgment, the trial court ordered that a peremptory writ of mandamus issue commanding Hubbard to permit petitioners to examine and copy the designated corporate records. On appeal, this court affirmed the order, Fownes v. Hubbard Broadcasting, Inc. 302 Minn. 471, 225 N. W. 2d 534 (1975), and denied Hubbard's petition for rehearing. Thereafter, petitioners moved the district court for, and were denied, various forms of relief, including the attorneys fees and related expenses which are the subject of the present appeal. Neither the reasonableness of such claimed attorneys fees, $15,000, nor the asserted amount of such expenses, $672.12, is at issue here; what is in controversy is whether attorneys fees and related costs and expenses are included within the term "damage" for purposes of Minn. St. 586.09.[2]

Before turning to an analysis of that statute we first consider petitioners' contention made during oral argument before this court that, in view of the particular circumstances of this case, equity demands that they recover attorneys fees and related expenses. In oral argument petitioners maintained that the foregoing procedural history demonstrates Hubbard never raised a legally meritorious defense to petitioners' claimed right of access, but resisted the request for inspection and thus instigated the ensuing protracted litigation simply as a stalling tactic in order to harass the petitioners.

The general American rule is that attorneys fees may not be awarded to a successful litigant without explicit statutory or contractual authorization. A well-established exception to this rule is recognized in cases where the unsuccessful party has acted "in bad faith, vexatiously, wantonly, or for oppressive reasons," 6 Moore, Federal Practice (2 ed.) par. 54.77[2], p. 1709. However, petitioners did not base their claim in the district court on the theory that the present case comes within this exception. In their briefs filed both in this court and the district court, petitioners

[2] See footnote 1, *supra*.

consistently based their claim on the contention that the word "damage" in Minn. St. 586.09 includes attorneys fees and related expenses. This basic position was adhered to during oral argument before this court, wherein counsel for petitioners stated that the bad-faith exception to the usual rule regarding attorneys fees was being cited only for illustrative purposes, contending that the reasoning underlying the bad-faith exception should be applied to a construction of § 586.09. Because petitioners did not present to the district court the theory that the facts of the instant case bring it within the scope of the bad-faith exception, we do not have the benefit of a record, arguments, or trial court ruling directly addressing that issue, and we therefore decline to resolve it in this opinion.[3]

We next turn to a consideration of petitioners' major argument which is that, regardless of the circumstances or equities involved in any particular case, the word "damage" in Minn. St. 586.09 should be construed as embracing attorneys fees and related costs and expenses. Although the specific issue of whether attorneys fees may be recovered as damages in mandamus actions is one of first impression in Minnesota, it is the settled gen-

---

[3] For similar reasons we decline to resolve the issue of whether this case comes within the scope of another well-established exception to the general American rule, namely, that a court can award attorneys fees where plaintiff, through litigation, has conferred a substantial benefit upon the members of an ascertainable class, and where such award of attorneys fees results in spreading the litigation costs proportionately among them. See, Mills v. Electric Auto-Lite Co. 396 U. S. 375, 90 S. Ct. 616, 24 L. ed. 2d 593 (1970); Bosch v. Meeker Co-op. Light & Power Assn. 257 Minn. 362, 101 N. W. 2d 423 (1960).

As the trial judge indicated in his memorandum, it remains open to petitioners to institute a separate action (perhaps a shareholders' derivative suit) to recover attorneys fees on the theory that the particular facts of the instant case bring it within the scope of either of the aforementioned exceptions. However, we find these exceptions unpersuasive in the context in which petitioners rely on them in the instant litigation—as warranting a conclusion that the word "damage" in Minn. St. 586.09 should be construed to include attorneys fees.

eral rule in this state regarding all other types of legal proceedings that "attorney's fees are not recoverable as an item of damages unless there is a specific contract permitting such recovery or such fees are authorized by statute." Dworsky v. Vermes Credit Jewelry, Inc. 244 Minn. 62, 69, 69 N. W. 2d 118, 124 (1955); Rent-A-Scooter, Inc. v. Universal Underwriters Ins. Co. 285 Minn. 264, 268, 173 N. W. 2d 9, 11 (1969). This general rule obtains even though a governing statute specifically permits the recovery of "damages." Smith v. Chaffee, 181 Minn. 322, 326, 232 N. W. 515, 516 (1930). Courts in other jurisdictions have reached varying conclusions on this issue.[4] Since these decisions have often turned on the unique statutory wording or legislative history involved in the particular jurisdiction, we premise our construction of the Minnesota statutes upon our analysis of the legislative intent and policies reflected therein, rather than upon the other precedents.

As for the legislative intent reflected in the term "damage" as used in Minn. St. 586.09, we note that a number of Minnesota statutes specifically provide for the recovery of attorneys fees by successful litigants in certain types of action. See, for example, Minn. St. 221.271, permitting recovery against a motor carrier which has violated a statutory standard of performance:

"Any motor carrier which shall do or cause to be done any unlawful act as herein provided * * * shall be liable in damages to any person injured thereby, and such person, if he recovers, shall be allowed, *in addition to damages, reasonable attorneys' fees*, together with costs and disbursements." (Italics supplied.)

The reference to attorneys fees as being "in addition to damages" indicates the legislature's intention that these two elements of recovery are distinct and that neither is included in the other. Moreover, this provision, as well as a host of similar ones in the Minnesota statutes,[5] demonstrates that the legislature is capable

---

[4] See, Annotataion, 73 A. L. R. 2d 903, 924.

[5] Other provisions in the Minnesota statutes which explicitly authorize the recovery of attorneys fees as an item separate and apart

of explicitly providing for the recovery of "reasonable attorneys' fees" in addition to "damages" when it so desires, and that its failure to make such a specific provision in the mandamus statute must therefore be treated as deliberate. This determination is supported by the holding of the United States Supreme Court, in its latest opinion dealing with the recovery of attorneys fees by successful litigants, that "it is not for us [the courts] to invade the legislature's province" by awarding attorneys fees in the absence of explicit statutory authorization. Alyeska Pipeline Service Co. v. The Wilderness Soc. 421 U. S. 240, 271, 95 S. Ct. 1612, 1628, 44 L. ed. 2d 141, 161 (1975).

The interpretation of Minn. St. 586.09 which petitioners urge is not only at odds with the clear legislative intent reflected in the statutory language but also lacks any policy basis. Petitioners do not urge this court to reject the general American rule, long recognized in Minnesota, that in the absence of explicit statutory or contractual authorization, attorneys fees may not be recovered by a successful litigant. Nor do petitioners challenge the validity of the policy rationales underlying the general rule. Rather, petitioners seek to distinguish mandamus actions from all other civil actions in terms of the applicability of these underlying rationales.

The principal such distinction which petitioners attempt to draw is that in mandamus actions of this sort, attorneys fees *are* in fact damages as usually defined, i. e., "the normal and legitimate consequences of the wrongful refusal by the Company

---

from damages include: Minn. St. 117.195 (recovery by land owner upon dismissal of eminent domain proceeding); Minn. St. 168.75 (purchaser's right to recover from violator of Motor Vehicle Retail Installment Sales Act); Minn. St. 219.33 (action against railroad for failure to construct a fence); Minn. St. 514.71 (action to enforce hospital lien); Minn. St. 518.14 (actions for separate maintenance or dissolution of marriage); Minn. St. 548.04 (judgment in replevin); Minn. St. 559.21 (termination of contract for deed); Minn. St. 580.17 (mortgage foreclosures); Minn. St. 588.11 (recovery by injured party for other party's contempt of court).

to honor [the minority shareholders'] legitimate demand to inspect the Company's books and records." While this argument is not without some merit, we cannot accept it as the basis for upholding petitioners' claim. Whenever any party in any legal proceeding prosecutes an unmeritorious claim or defense, a "normal and legitimate" consequence to the opposing party is the incurring of attorneys fees and related costs. Therefore, mandamus proceedings are not inherently distinguishable from other forms of civil actions on this basis.

Nor is the petitioners' argument that under the particular circumstances of this case, attorneys fees comprise "the sole *compensatory* element of their damages," one which persuasively supports their interpretation of the mandamus damages provision. Certainly it cannot be argued that all mandamus actions are similar to this case which involves no damages to the petitioners other than costs of litigation. Nor can it be argued, on the other hand, that the situation could not arise in ordinary civil litigation where the major demonstrable loss incurred by the plaintiff is the cost of bringing a suit to vindicate his rights.

Perhaps it could be argued that the general rule barring recovery of attorneys fees is no longer appropriate since these costs, like those costs which are traditionally recognized as damages, are monetary losses proximately caused by the unsuccessful party's conduct. However, so long as the general rule remains in effect, neither the instant case nor mandamus actions in general can be claimed to be outside its scope on the ground that the losses incurred are inherently different from those incurred in civil actions generally.

Petitioners next argue that mandamus actions may be distinguished from other civil litigation in that "[w]hile it is generally true that in most types of civil litigation the parties are presumptively on an equal footing, * * * this is never the case in a mandamus proceeding brought by minority shareholders to compel their corporation to open its books and records for inspection." In so far as any generalization can be made regarding

the relative advantages of the parties in various types of civil litigation, rules of law and procedure make a mandamus petitioner's position much stronger than that of a plaintiff in ordinary civil litigation. In the latter situation, the plaintiff has the burden of proof, whereas, in a mandamus proceeding of this type, it is the defending party which has the burden of proof.[6]

Petitioners finally assert as another distinction between mandamus and other forms of civil action that the opportunity to recover attorneys fees as damages would encourage the poor to bring mandamus actions to vindicate their rights. Again, petitioners' argument, if valid, would hold true for all civil actions, since it is difficult to see why the incentive to initiate lawsuits created by making attorneys fees recoverable would be a phenomenon unique to mandamus actions. If the legislature believed that private rights or public interests implicated by shareholders' access to corporate records were so significant that strong incentives to institute mandamus proceedings should be provided to shareholders whose requests for such access are denied, it could have specifically provided for the award of attorneys fees as one such incentive to initiate these suits.[7]

---

[6] When a petitioner for mandamus pleads a "proper purpose" for inspection, the burden has always been cast upon the defendant corporation to allege "facts tending to establish" an improper purpose. Nationwide Corp. v. Northwestern Nat. Life Ins. Co. 251 Minn. 255, 263, 87 N. W. 2d 671, 679 (1958). In our opinion in the prior appeal in the instant action, we ruled that "the *mere allegation* * * * that the information sought is for a proper purpose" will compel inspection "until rebutted by *evidence* of improper motive or purpose." Fownes v. Hubbard Broadcasting, Inc. 302 Minn. 471, 473, 474, 225 N. W. 2d 534, 536 (1975). (Italics supplied.)

[7] Where the Minnesota Legislature has determined that successful litigants in certain types of proceedings should be awarded attorneys fees, it has explicitly so provided. See the examples of Minnesota statutes cited at footnote 4, *supra.* Numerous Federal statutes seek to encourage the initiation of litigation for the vindication of important statutorily protected rights by providing for the recovery of attorneys fees by successful plaintiffs in such actions. E. g., Freedom of Informa-

For the foregoing reasons we hold that attorneys fees and related costs and expenses are not recoverable as damages under Minn. St. 586.09. Therefore, we affirm the judgment of the trial court.

Affirmed.

---

tion Act, 5 USCA, § 552(a)(4)(E); Clayton Act, 15 USCA, § 15; Securities Act of 1933, 15 USCA, § 77k(e); Truth-in-Lending Act, 15 USCA, § 1640 (a); Civil Rights Act of 1964, 42 USCA, § 2000a-3(b). We invite the legislature to consider whether attorneys fees should be awarded to minority shareholders in cases of this kind.