**John IRWIN, Relator,**

v.

**SURDYKS LIQUOR and American Compensation Insurance/RTW, Inc., Respondents.**

**Craig L. Frisch, Relator,**

v.

**S & S Carpet Designs and State Farm Insurance Company, Respondents.**

**Nos. C6–99–95, CX–99–178.**

Supreme Court of Minnesota.

Sept. 2, 1999.

Law Office of David C. Wulff, David C. Wulff, Roseville, for employee-relator.

Cousineau, McGuire & Anderson, Chtd., Michael J. Patera, Minneapolis, for employer-respondent (c69995).

McCollum, Crowley, Vehanen, Moschet & Miller, Ltd., Nancy E. Lamo, Bloomington, for employer-respondent (cx99178).

OPINION

GILBERT, Justice.

The relators in these consolidated cases challenge the attorney fees awarded by the compensation judge and the Workers' Compensation Court of Appeals (WCCA) pursuant to Minn.Stat. § 176.081 (1998). The relators assert that the 1995 amendments to section 176.081, which limit the availability and amounts of attorney fees, violate the Separation of Powers and Due Process Clauses of the Minnesota Constitution. *See* Minn. Const. art. III, § 1, and art. I, § 7. Neither of the lower courts addressed the constitutionality of the statute, acknowledging that they lacked jurisdiction. We hold that the statutorily imposed limitation on attorney fees violates the doctrine of separation of powers insofar as it is not subject to review by a duly established court and grants final authority over attorney fees to a non-judicial body. We therefore reverse and remand.

The relators further assert that the provisions of Minn.Stat. § 176.081 allowing for an award of attorney fees based on "the dollar value of the medical benefit awarded" should be interpreted to mean the dollar amount billed by the provider of the medical benefit, rather than the fee schedule amount awarded. We disagree, and affirm the holding of the WCCA. Relator John Irwin makes two additional arguments. He first asserts that where the right to receive future medical expenses is secured, the award of attorney fees should include an award on those future medical expenses. We hold that where future medical benefits and disputes based thereon are speculative, the attorney is not entitled to an award based on such expenses, and therefore affirm the WCCA. Secondly, Irwin asserts that pursuant to Minn.Stat. § 176.081, subd. 7, awards to employees based upon a percentage of attorney fees paid should be based on all attorney fees

awarded, not just on those paid by the employee through contingent fees. We conclude that this is a proper reading of the plain language of the statute, and reverse the WCCA's holding to the contrary.

*Irwin v. Surdyk's Liquor et al.*

John Irwin was involved in a work-related motor vehicle accident on September 13, 1996. As a result of that accident, he suffered neck, shoulder, and jaw pain and headaches. Surdyk's Liquor and its insurer, American Compensation Insurance Company (hereinafter referred to collectively as "Surdyk's") denied liability, and Irwin retained attorney David C. Wulff. Wulff filed a claim petition and represented Irwin at the hearing. Irwin claimed 15% permanent partial disability, payment of treatment from a physician for a billed amount of $4612.53, payment of treatment from another physician for a billed amount of $4955.12, payment of medical mileage reimbursement in the amount of $15.12, and statutory interest on all benefits.

The compensation judge awarded Irwin $6000 for 8% permanent partial disability benefits, payment of all of one and a portion of the other physicians' charges pursuant to the fee schedule, medical mileage of $15.12, and statutory interest on each of these amounts. The compensation judge also ordered reimbursement of costs and disbursements advanced by Wulff and contingent fees to be withheld from Irwin's permanent partial disability award of $6000. Neither party appealed the award.

On February 5, 1998, Wulff filed an application for payment of the withheld contingent fees and additional fees based on and related to the recovery of medical expenses, commonly called *Roraff* fees. *See generally Roraff v. State*, 288 N.W.2d 15 (Minn.1980). In this application, Wulff claimed that he performed 37 hours of professional services. He sought payment of the contingent fees already being withheld from Irwin's permanent partial disability award, and *Roraff* fees payable by Surdyk's in the amount of $4150. The

requested *Roraff* fees and the contingent fees totaled $5550, which would have compensated Wulff for his 37 hours at the hourly rate of $150.

Following a hearing, the compensation judge found that the 37 hours spent by Wulff were reasonable and necessary in light of the issues involved in the case. Surdyk's did not contest that the $150 per hour rate was reasonable. The compensation judge found that the $1400 contingent fee was inadequate to reasonably compensate Wulff for his 37 hours of services, and that Wulff was therefore entitled to *Roraff* fees based on the medical expenses paid. Those fees were based on 20% of the fee schedule amount paid, and totaled $1682.99. Combined with the $1400 contingent fee, the compensation judge awarded Wulff a total of $3082.99.

The compensation judge also awarded Irwin 30% of all attorney fees paid to Wulff in excess of $250, under Minn.Stat. § 176.081, subd. 7. The judge interpreted this statute to provide "an award (not a reimbursement)" based on all attorney fees paid to claimant's attorney pursuant to Minn.Stat. § 176.081, not just contingent fees. Further, the compensation judge determined that although Wulff requested attorney fees for future medical benefits that might become payable, any such award would be premature, as no future medical benefits had been paid or disputed by the employers or insurers.

Cross-appeals were filed by both parties. On appeal, Surdyk's did not contest the compensation judge's finding that the contingent fee award was inadequate to reasonably compensate Irwin's attorney, but disputed the compensation judge's finding that the amount of time Wulff spent on the case was reasonable. The WCCA upheld the award of *Roraff* fees based on medical expenses paid and held that the compensation judge's method of determining the adequacy of the contingent fees as compensation for the attorney was reasonable. After outlining the 1995 amendments to Minn.Stat. § 176.081, the WCCA stated,

"the current statute provides no standards for determining whether a contingent fee award is inadequate to reasonably compensate an attorney for representing an employee in a medical or rehabilitation dispute." While noting that there was some merit to Irwin's position challenging the constitutionality of Minn.Stat. § 176.081, subd. 1, the WCCA acknowledged that it lacked jurisdiction to determine the constitutionality of the statute. The WCCA concluded that the statute allowed an additional award based on medical benefits only in accordance with the precise percentage-based formula of Minn.Stat. § 176.081, subd. 1(a). Accordingly, the WCCA did not address the reasonableness of the requested attorney fees.

The WCCA found "no merit" in Irwin's assertion that the attorney fee award should be based on the actual amount billed by the provider. The WCCA determined that Minn.Stat. § 176.136, subd. 1(a) (1998) limits the liability of an employer or insurer to the fee schedule amount, and because "the compensation judge could not award a medical benefit in excess of that provided in this schedule," the fee schedule amount was the proper amount on which to base attorney fees.

As to Irwin's contention that attorney fees should be awarded for future medical benefits, the WCCA stated that "the phrase 'benefit awarded' [as used in Minn. Stat. § 176.081, subd. 1(a)(1) ] is plain and unambiguous and limits the attorney fees to the dollar amount of the benefits awarded in the proceeding."

Finally, the WCCA determined that the compensation judge erred in ordering payment to the employee of 30% of all attorney fees under Minn.Stat. § 176.081, subd. 7. The WCCA looked to the purpose of subdivision 7, which is "to reduce the impact of withholding reasonable attorney fees from the compensation benefits to which the employee is entitled." The WCCA determined that because "courts have traditionally treated subdivision 7

fees as reimbursement to the employee," subdivision 7 fees should be based only on attorney fees paid by the employee, not on those paid by the employer.

*Frisch v. S & S Carpet Design et al.*

Craig Frisch sustained a work-related back injury on November 20, 1995. S & S Carpet Designs and its insurer, State Farm Insurance Company (hereinafter referred to collectively as "S & S") accepted primary liability and paid temporary total disability benefits from November 20, 1995 through January 15, 1996. On January 15, 1996, Frisch accepted a position as an assistant manager in training at a retail store, at a lower rate of pay than he had earned at S & S. In late January or early February, S & S contacted Frisch and told him that work was available. S & S did not specify the type of work or rate of pay, and Frisch informed S & S that he was already employed and thus unavailable. S & S then refused to pay medical expenses and wage loss benefits, and Frisch retained Wulff.

Wulff filed a claim petition and represented Frisch at the hearing. Frisch claimed temporary partial disability, and sought compensation of the difference between what he would have earned at S & S and what he earned at his new job, until the new job paid equivalent to his job at S & S. Frisch also claimed 5% permanent partial disability, payment of treatment from two chiropractors, one for a billed amount of $326.90 and the other for a billed amount of $358. The compensation judge found Frisch to have a permanent partial disability rating of 0%, and did not award any benefits for permanent partial disability. The compensation judge ordered S & S to pay temporary partial disability benefits based on Frisch's earnings at his new job, both chiropractic bills pursuant to the fee schedule, and costs and disbursements advanced by Wulff. Pursuant to Minn.Stat. § 176.081, subd. 7, the compensation judge also ordered S & S to

pay Frisch 30% of all attorney fees paid pursuant to Minn.Stat. § 176.081. Neither party appealed the award.

Wulff filed an application for *Roraff* and contingent fees. Wulff claimed that he performed 43.4 hours of services. He sought $401.16 in contingent fees, to be withheld from Frisch's award of $1604.65.[1] Wulff also sought *Roraff* fees payable by S & S, which together with the contingent fees, totaled $6510, an amount that would have compensated Wulff for his 43.4 hours at the hourly rate of $150.

Following a hearing, the compensation judge found that the 43.4 hours spent by Wulff was reasonable, as was Wulff's rate of $150 per hour, given his experience and expertise in the area. The compensation judge thus determined that $6510 was a reasonable attorney fee. The compensation judge found that the contingent fee was inadequate to reasonably compensate Wulff for his services, and that Wulff was therefore entitled to *Roraff* fees based on the medical expenses paid. However, the compensation judge determined that Minn. Stat. § 176.081, subd. 1(a) limits *Roraff* fees to 25% of the first $4000 awarded, and that Wulff was therefore entitled to only $179.48, based on 25% of the fee schedule amounts paid plus medical mileage. The compensation judge thus awarded Wulff a total of $575.94 of *Roraff* and contingent fees, stating that because of the statutory limits, "the undersigned has no authority to award reasonable attorney's fees and must, instead, award the fee based on the contingent fee. Instead of awarding reasonable attorney's fees, the undersigned has awarded permissible attorney's fees, which is what the law now provides."

On appeal, the WCCA affirmed the compensation judge's order as to its lack of authority to award fees in excess of the statutory limitation, and acknowledged that it lacked jurisdiction to determine the merits of Frisch's constitutional claims.

---

1. The compensation judge found that wage loss benefits paid to Frisch were $1569.82, and that Wulff's compensation therefrom would total $392.46, rather than $401.16.

The WCCA instead preserved the constitutional claims for determination by this court. On appeal, S & S did not contest the compensation judge's determination as to the reasonableness of the attorney fees sought, and given its other holdings, the WCCA did not address this issue. The WCCA also rejected Frisch's arguments that the *Roraff* fees should be based on the amount billed by the provider rather than the amount paid under the fee schedule and that *Roraff* fees should be awarded based on possible future medical expenses.

## I.

 We first address relators' contention that Minn.Stat. § 176.081 (1998) violates the Separation of Powers Clause of the Minnesota Constitution. *See* Minn. Const. art. III, § 1. To challenge the constitutionality of a statute, a party must raise the issue before the lower court and notify the attorney general of the intended challenge in a timely fashion. *See Automotive Merchandise, Inc. v. Smith,* 297 Minn. 475, 476–77, 212 N.W.2d 678, 679–80 (1973); *see also* Minn. R. Civ.App. P. 144 (1999). A party is deemed to have waived any such challenge by failing to raise the issue and notify the attorney general in a timely manner. *Cf. Automotive Merchandise,* 297 Minn. at 476–77, 212 N.W.2d at 679–80 (refusing review where party failed to raise issue at trial court and to notify attorney general). Both requirements were satisfied in these cases, and thus we turn to the merits of relators' assertion.

 All statutes come to us with a strong presumption in favor of their constitutionality, and the party challenging the statute bears a heavy burden of proving it unconstitutional. *See Mack v. City of Minneapolis,* 333 N.W.2d 744, 751 (Minn.1983).

The Minnesota Constitution delineates the division of powers necessary among the three branches of government. The Separation of Powers Clause reads:

> The powers of government shall be divided into three distinct departments: legislative, executive and judicial. No person or persons belonging to or constituting one of these departments shall exercise any of the powers properly belonging to either of the others except in the instances expressly provided in this constitution.

Minn. Const. art. III, § 1. As we have previously noted, the separation of powers doctrine "has roots deep in the history of Anglo–American political philosophy." *Wulff v. Tax Court of Appeals,* 288 N.W.2d 221, 222 (Minn.1979). In *Wulff,* we acknowledged that:

> [w]hile * * * the actual workings of such a balanced government has been altered through the years, the basic principle remains; too much power in the hands of one governmental branch invites corruption and tyranny. Notwithstanding the separation of powers doctrine, there has never been an absolute division of governmental functions in this country, nor was such even intended.

*Id.* at 223.

Workers' compensation claims are handled by the Department of Labor and Industry, an executive branch agency. *See generally* Minn.Stat. § 175.006 (1998). The industrial commission of the Department of Labor and Industry handled these claims until 1973, when they were transferred to the workmen's compensation commission.[2] *See* Act of May 19, 1973, ch. 388, § 3, 1973 Minn. Laws 787, 789–90, *codified at* Minn.Stat. § 175.006. Under the workers' compensation commission, workers' compensation claims are heard by a compensation judge, a member of the executive branch. *See* Minn.Stat. § 176.011, subd. 7a(3) (1998). The determinations of the compensation judge may

---

**2.** In 1975, the name of the commission was changed from the workmen's compensation commission to the workers' compensation commission. *See* Act of June 4, 1975, ch. 359, § 23, 1975 Minn. Laws 1168, 1189.

be appealed to the WCCA, an independent agency of the executive branch. *See* Minn. Stat. § 175A.01, subd. 1 (1998). The WCCA has exclusive jurisdiction to hear all appeals allowed under the Workers' Compensation Act. *See id.* § 175A.01, subd. 5 (1998). This court, however, retains authority to review all decisions of the WCCA to ensure that the WCCA's order conforms to the Workers' Compensation Act, that the WCCA has not committed any other error of law, and that the order and the findings of fact are supported by substantial evidence. *See* Minn. Stat. § 176.471, subd. 1 (1998).

We have upheld the former attorney fee provisions of the Workers' Compensation Act against separation of powers challenges. *See, e.g., Mack,* 333 N.W.2d at 752–53; *cf. Breimhorst v. Beckman,* 227 Minn. 409, 432, 35 N.W.2d 719, 733–34 (1949) (upholding quasi-judicial powers of industrial commission). However, each of these challenges was brought under the predecessor statute. The 1995 amendments enacted significant changes in the Workers' Compensation Act as it relates to attorney fees and our ability to regulate such fees.

Prior to its amendment in 1995, Minn. Stat. § 176.081 provided a contingent fee formula by which attorney fees were determined. *See* Minn.Stat. § 176.081, subd. 1(a) (1994). The formula allowed attorney fee awards of 25% of the first $4000 awarded an employee and 20% of the next $60,000 of the employee's award. *See id.* Where a compensation judge determined the contingent fee to be inadequate, section 176.081 allowed a compensation judge to determine and award reasonable attorney fees based on several factors, such as the difficulties of the issues and the amount of the claim. *See id.* § 176.081, subd. 5(d). In cases involving medical benefits, attorneys could also apply for *Roraff* fees, which were not limited in amount but could be awarded up to the point necessary to reasonably compensate the attorney. *See id.* § 176.081, subd.

1(a); *Roraff,* 288 N.W.2d at 16. Until the 1995 amendments, these awards were appealable to the WCCA, whose decision was in turn reviewable by us by certiorari. *See* Minn.Stat. § 176.081, subd. 3 (1994); Minn.Stat. § 176.481 (1994). Because the statute allowed judicial review of attorney fees and deviation from the contingent fee formula where that amount did not adequately compensate the attorney, we upheld the pre–1995 statute against separation of powers challenges. *See, e.g., Mack,* 333 N.W.2d at 754.

As amended, the statute reads:

Subdivision 1. (a) A fee for legal services of *25 percent of the first $4000 of compensation awarded to the employee and 20 percent of the next $60,000 of compensation awarded to the employee is the maximum permissible fee* and does not require approval by the commissioner, compensation judge, or any other party. All fees, including fees for obtaining medical or rehabilitation benefits, must be calculated according to the formula under this subdivision, except as otherwise provided in clause (1) or (2).

(1) The contingent attorney fee for recovery of monetary benefits according to the formula in this section is presumed to be adequate to cover recovery of medical and rehabilitation benefit or services concurrently in dispute. Attorney fees for recovery of medical or rehabilitation benefits or services shall be assessed against the employer or insurer only if the attorney establishes that the contingent fee is inadequate to reasonably compensate the attorney for representing the employee in the medical or rehabilitation dispute. In cases where the contingent fee is inadequate the employer or insurer is liable for attorney fees based on the formula in this subdivision or in clause (2).

For the purposes of applying the formula where the employer or insurer is liable for attorney fees, the amount of compensation awarded for obtaining disputed medical and rehabilitation benefits

under sections 176.102, 176.135, and 176.136 shall be the dollar value of the medical or rehabilitation benefit awarded, where ascertainable.

(2) The maximum attorney fee for * * * any * * * disputed medical or rehabilitation benefit for which a dollar value is not reasonably ascertainable, is the amount charged in hourly fees for the representation or $500, whichever is less, to be paid by the employer or insurer.

(3) The fees for obtaining disputed medical or rehabilitation benefits are included in the $13,000 limit in paragraph (b). * * *

* * * *

(b) *All fees for legal services related to the same injury are cumulative and may not exceed $13,000.* * * *

* * * *

(e) Employers and insurers may not pay attorney fees or wages for legal services of more than $13,000 per case.

* * * *

Subd. 3. A party that is dissatisfied with its attorney fees *may file an application for review by the workers' compensation court of appeals.* The application shall state the basis for the need of review * * *. The workers' compensation court of appeals shall have the authority to raise the issue of the attorney fees at any time upon its own motion and shall have continuing jurisdiction over attorney fees.

* * * *

Subd. 9. An attorney who is hired by an employee to provide legal services with respect to a claim for compensation made pursuant to this chapter shall prepare a retainer agreement in which the provisions of this section are specifically set out. * * * No fee shall be awarded pursuant to this section in the absence of a signed retainer agreement * * * [which shall state]:

*The maximum fee allowed by law* for legal services is 25 percent of the first $4000 of compensation awarded to the employee and 20 percent of the next $60,000 of the compensation awarded to the employee subject to a cumulative maximum fee of $13,000 for fees related to the same injury.

Minn.Stat. § 176.081 (1998) (emphasis added).

As amended, section 176.081 sets "the maximum permissible fee" based exclusively on the dollar amount of the recovery. Minn.Stat. § 176.081, subd. 1(a) (1998), *see also id.* § 176.081, subd. 9 (requiring an attorney retained in a workers' compensation claim to include in the written retainer agreement notice of "[t]he maximum fee allowed by law"). The amount is set without regard to factors that were previously considered in determining reasonable attorney fees, such as the amount involved, the time and expense necessary to prepare for trial, the responsibility assumed by counsel, the expertise of counsel, the difficulties of the issues, the nature of proof involved, and the results obtained. *Compare* Minn.Stat. § 176.081, subd. 1(a) (1998) *with* Minn.Stat. § 176.081, subds. 1(a), 5(d) (1994). While the current version of Minn.Stat. § 176.081 provides a means of appeal to the WCCA, *see* Minn.Stat. § 176.081, subd. 3 (1998), it also specifically sets the "maximum permissible fee," thus limiting the WCCA's, and in turn, this court's power of review. Minn.Stat. § 176.081, subd. 1(a) (1998).

The WCCA recognized that "[t]he 1995 amendments effected a radical change in the Minnesota attorney fee statutes, significantly altering both the availability of attorney fees and the manner in which attorney fees are to be determined and paid." *Ramirez v. Dee, Inc.,* 1998 WL 95888 at *3 (Minn.Work.Comp.Ct.App. February 9, 1998). In the instant cases, the WCCA remained mindful of these major statutory changes. Although the WCCA felt that the employees' positions were meritorious, it acknowledged that it lacks jurisdiction to

determine the constitutionality of statutes. *See generally* Minn.Stat. § 175A.01, subd. 5 (1998); *Hagen v. Venem,* 366 N.W.2d 280, 283 (1985) (noting that WCCA is a court of limited jurisdiction having jurisdiction only over matters arising out of Minnesota's workers' compensation statutes).

As they did before the compensation judge and the WCCA, relators continue to assert that the 1995 amendments violate the separation of powers doctrine because the judiciary has the exclusive control over attorneys and the practice of law. Relators argue that since the limits set by the legislature are not subject to judicial review, the legislature has usurped the judiciary's power.

We have carefully preserved over the years the concept that the judiciary retains final control over attorneys. As long ago as 1937, we stated:

> We must not lose sight of the fact that an attorney is an officer of the court. * * * The court has plenary and summary authority to control and protect the attorneys appearing therein, including as well their relation to suitors, to the end that no injustice be done and no overreaching by counsel of his client take place.

*Hollister v. Ulvi,* 199 Minn. 269, 277, 271 N.W. 493, 497 (1937) (discussing the appropriateness of contingent fee contracts).

Similarly, in *In re Petition for Integration of the Bar,* 216 Minn. 195, 12 N.W.2d 515 (1943), we stated:

> The fundamental functions of the court are the administration of justice and the protection of the rights guaranteed by the Constitution. To effectively perform such functions * * * it is essential that the court have the assistance and cooperation of an able, vigorous, and honorable bar. It follows that the court has not only the power, but the responsibility as well, to make any reasonable orders, rules, or regulations which will aid in bringing this about, and that the making of regulations and *rules governing the legal profession falls squarely within the judicial power thus exclusively reserved to the court.*

*Id.* at 199, 12 N.W.2d at 518 (emphasis added).

In *Sharood v. Hatfield,* 296 Minn. 416, 210 N.W.2d 275 (1973), we struck down as unconstitutional a statute requiring attorney registration fees to be diverted into the state's general fund rather than into a separate fund for use in the administration of the bar. *See id.* at 429, 210 N.W.2d at 282. While expressing reluctance to strike down a legislative act when that action "involves a determination of what is a legislative prerogative and what is a judicial function," we stated, "if it is a judicial function that the legislative act purports to exercise, we must not hesitate to preserve what is essentially a judicial function." *Id.* at 423, 210 N.W.2d at 279. We acknowledged that we had previously acquiesced in other legislative acts prescribing various rules regarding attorneys. *See id.* at 424, 210 N.W.2d at 279. However, we went on to clearly state that we so acquiesced only "as long as such acts did not usurp the right of the court to make the final decision." *Id.* We noted that, "when the legislature attempts to go beyond merely indicating what it deems to be desirable, we have not hesitated to strike down such acts as unconstitutional." *Id.*

We have permitted delegation of quasi-judicial functions to executive branch agencies in legislative "specialty" areas such as taxation and workers' compensation, but only so long as the expansion of that delegation did not result in a significant impingement on the judicial branch. *See Breimhorst,* 227 Minn. at 433, 35 N.W.2d at 734. In *Breimhorst,* we held that statutory regulation of attorney fees in the Workers' Compensation Act was permissible because the statute provided for review by certiorari and thus, the agency determination lacked judicial finality. *See id.* We reasoned:

> In the exercise of the police power, the vesting by the legislature in the industrial commission of quasi-judicial powers—

inclusive of the power to determine facts and apply the law thereto in employment-accident controversies—is not in violation of state constitutional provisions for the division of the powers of government or for the vesting of the judicial power in the courts, *as long as* the commission's awards and determinations are not only subject to review by certiorari, but lack judicial finality in not being enforceable by execution or other process in the absence of a binding judgment entered thereon by a duly established court.

*Id.* (emphasis added). We have since stated that "the criteria set out in *Breimhorst* mark the outside limit of allowable quasi-judicial power in Minnesota." *Wulff,* 288 N.W.2d at 223. We recently declined to limit *Breimhorst* or adopt a less stringent standard in our separation of powers analysis. *See Holmberg v. Holmberg,* 588 N.W.2d 720, 725 (Minn.1999).

In *Mack,* we upheld section 176.081 as it existed prior to the 1995 amendments. *See Mack,* 333 N.W.2d at 753. There, the employee's attorney, whose client was awarded over $700,000 in benefits, challenged the statute on due process and separation of powers grounds. *See id.* at 746. In addressing the separation of powers challenge, we synthesized the *Sharood v. Hatfield* and *Hollister v. Ulvi* opinions and concluded that "these cases indicate that not all conceivable regulation of attorney fees would be constitutionally permissible." *Mack,* 333 N.W.2d at 752. We determined that Minn.Stat. § 176.081 (1982) did not grant "final authority over attorney fees * * * to a non-judicial body, since ultimately we [could] review all attorney fee decisions." *Id.* We thus held that "power in the commission to set attorney fees [was] constitutionally permissible, because the awards [were] reviewable by this court." *Id.* at 753.

Similarly, in addressing a challenge to the prior statute, we stated that "we have not found the delegation of quasi-judicial powers to executive branch agencies * * *

to be a violation of the constitutional provision for the separation of powers of government *so long as* the determinations of those agencies lack judicial finality and are subject to judicial review." *Quam v. State,* 391 N.W.2d 803, 810 n. 6 (Minn.1986) (emphasis added).

■ Thus, actions by the commission, including regulation of attorney fees, are permissible only *so long as* they lack judicial finality and are subject to judicial review. Accordingly, we do not take issue with the actual percentage or dollar limitations adopted by the legislature in Minn. Stat. § 176.081 (1998). The legislature has been vested with wide discretion in making laws and determining issues of public policy, even when those issues involve establishing attorney fee guidelines. However, in order for the legislative guidelines to be constitutionally permissible, we must retain final authority over attorney fee determinations.

Respondents urge us to conclude that Minn.Stat. § 176.081, subd. 3 (1998) which allows for review of attorney fees by the WCCA, provides sufficient judicial review so as to render the statute constitutional. However, the review provision of Minn. Stat. § 176.081, subd. 3, is subject to the "maximum permissible fee" as set out in Minn.Stat. § 176.081, subd. 1(a). Respondents concede that even if we read subdivision 3 as allowing review by this court, our sole review power would be limited to determining whether the statutory formula had been properly applied by the compensation judge and the WCCA, both members of the executive branch.

This limitation goes beyond merely indicating what the legislature deems desirable. Even as here, where there was a finding that the fees awarded were inadequate to reasonably compensate relators' attorney, the legislature has prohibited any deviation from the statutory maximum. Legislation that prohibits this court from deviating from the precise statutory amount of awardable attorney fees im-

pinges on the judiciary's inherent power to oversee attorneys and attorney fees by depriving this court of a final, independent review of attorney fees. This legislative delegation of attorney fee regulation exclusively to the executive branch of government violates the doctrine of separation of powers of Minn. Const. art. III, § 1. Accordingly, to the extent it impinges on our inherent power to oversee attorneys and attorney fees and deprives us of a final, independent review of attorney fees, we hold that section 176.081 is unconstitutional.[3]

The compensation judges made a finding of reasonable fees in both cases under consideration. However, because the WCCA in both cases determined that it had no authority to exceed the maximum amount allowed by the statute, the WCCA declined to address the reasonableness of the requested attorney fees. Those portions of section 176.081 that do not violate the doctrine of separation of powers remain valid. *See* Minn.Stat. § 176.651 (1998). Therefore, we remand to the WCCA to review the compensation judges' determination of reasonable attorney fees. In its review, the WCCA should not only consider the statutory guidelines, but also the amount involved, the time and expense necessary to prepare for trial, the responsibility assumed by counsel, the experience of counsel, the difficulties of the issues, the nature of the proof involved, and the results obtained. Because of this decision, we do not reach the issue of whether Minn. Stat. § 176.081 violates due process.

## II.

■ Minnesota Statute § 176.081, subd. 1(a), limits attorney fees to 25% of the first $4000 awarded and 20% of the next $60,000 awarded to the employee. Where that amount is inadequate, subdivision 1(a)(1) allows attorney fees to be awarded based on the same percentages of medical

3. The dissent relies on the common law "American Rule" of attorney fees in concluding that section 176.081 is not unconstitutional. However, the American Rule applies only when attorney fees are not provided for by statute. *See Alyeska Pipeline Co. v. Wilderness Soc'y*, 421 U.S. 240, 247, 257, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975). Because the Workers' Compensation Act specifically provides for fee-shifting, the American Rule has never been relied upon by this court in workers' compensation cases. Furthermore, none of our cases cited by the dissent involve or even mention workers' compensation cases, but instead deal with common law, rather than statutory, causes of action. *See, e.g., Kallok v. Medtronic, Inc.*, 573 N.W.2d 356, 363 (Minn. 1998) (dealing with tortious interference of contract claim, yet still not applying the American Rule); *Fownes v. Hubbard Broadcasting, Inc.*, 310 Minn. 540, 542, 246 N.W.2d 700, 702 (1976) (dealing with successful shareholder writ of mandamus, not applying American Rule); *Benson Coop. Creamery Ass'n v. First Dist. Ass'n*, 276 Minn. 520, 530, 151 N.W.2d 422, 428 (1967) (applying American Rule to contractual claims). Accordingly, the American Rule is wholly irrelevant to any discussion of statutorily mandated attorney fees under the Workers' Compensation Act.

The dissent's reliance on *Makemson v. Martin County*, 491 So.2d 1109 (Fla.1986) which addressed the issue of statutory maximum fee limitations for state-funded attorneys representing indigent clients in criminal cases is also misplaced. Contrary to the dissent's assertion, in *Makemson*, the Florida Supreme Court held that "[a]lthough facially valid, we find the statute unconstitutional when applied in such a manner as to curtail the court's inherent power to ensure the adequate representation of the criminally accused." *Id.* at 1112. The court accordingly held this encroachment to be a violation of the Florida Constitution's separation of powers provision. *Id.* It further found such statutory maximums as applied interfered with the accused's Sixth Amendment right to counsel and the facts in the case were sufficiently extraordinary to warrant the award of fees by the trial court in excess of statutory maximums. *Id.* at 1113.

Finally, the dissent seems to conclude that we should hold the statute constitutional because "most states have statutory restrictions on workers' compensation fees." However, the dissent fails to note that the majority of state statutes include a provision whereby attorney fees may be increased when necessary, and that those statutes which do not include such a provision almost universally do not make the attorney's acceptance of additional compensation a crime, as does Minn.Stat. § 176.081, subd. 10 (1998). *See* 10 Arthur Larson and Lex. K. Larson, *Larson's Workers' Compensation Law*, App. B, at 18B–2—18B–4 (1998).

or rehabilitation benefits awarded, where ascertainable. Subdivision 1(a)(1) states that the attorney award shall be based on "the *dollar value* of the medical or rehabilitation benefit *awarded,* where ascertainable." Minn.Stat. § 176.081 1(a)(1) (1998) (emphasis added). Relators assert that such an award of attorney fees should be based on the dollar amount of the actual charges of the health care provider, rather than the amount payable pursuant to the fee schedule of Minn.Stat. § 176.136 (1998). This presents a question of statutory construction which we review de novo. *See In re Blilie,* 494 N.W.2d 877, 881 (Minn.1993).

The WCCA stated that it found "no merit" to relators' argument and that the attorney fee award must be based on the fee schedule amount awarded. In so concluding, the WCCA stated, "the statute expressly states the attorney fees shall be based on the dollar value of the benefit 'awarded.'" The WCCA correctly determined that an award of attorney fees based on the dollar amount of the benefit awarded is appropriate. *See* Minn.Stat. § 176.136 (1998). Thus, we affirm.

### III.

■ Prior to the 1995 amendments, when part of an attorney's work involved obtaining future medical benefits for the claimant, that work could be taken into consideration in determining the reasonableness of the fees awarded. *See* Minn. Stat. § 176.081, subd. 1 (1994). However, the statute now provides for attorney fees to be awarded based on the medical benefits awarded. Minn.Stat. § 176.081, subd. 1(a) (1998). When the dollar value of the benefits awarded is not readily ascertainable, "[t]he maximum attorney fee for obtaining * * * any other disputed medical or rehabilitation benefit * * * is the amount charged in hourly fees for the representation or $500, whichever is less, to be paid by the employer or insurer." *See id.* § 176.081, subd. 1(a)(2).

Irwin asserts that he is entitled to attorney fees based on future medical benefits because, "[b]y establishing primary liability on behalf of Relator, Attorney Wulff not only recovered past medical expenses discussed above, he also secured the right for Relator to continue to receive future medical expenses reasonably required to cure or relieve the effects of his now established work-related injury."

The compensation court held that an award of attorney fees for future medical expenses would be premature, but that once the employee incurred future expenses, Wulff could file a request for additional fees. The WCCA disagreed, stating:

Under the amended statute, payment of *Roraff* or *Heaton* fees is limited to a percentage of "the dollar value of the medical or rehabilitation benefit awarded." Minn.Stat. § 176.081, subd. 1(a)(1). We believe the phrase "benefit awarded" is plain and unambiguous and limits attorney fees to the dollar amount of the benefits awarded in the proceeding. Whether the employee may be entitled to additional medical benefits in the future is speculative. Receipt of future medical benefits is dependent upon proof that the medical expenses claimed were reasonably necessary to cure and relieve the employee from the effects of the personal injury. If a dispute arises with respect to future medical expenses, the employee's attorney may be entitled to additional fees based on the amount of the benefits ultimately awarded.

Thus, the compensation court and the WCCA read the statute differently, yet both came to the conclusion that an award was inappropriate in the present case.

■ There is nothing in the record to show that Irwin will necessarily need future medical benefits. Thus, an award of additional attorney fees based on speculative future medical benefits is inappropriate at this time. Should a dispute arise with respect to future medical expenses, Wulff may at that time seek reimburse-

ment for services relating to that dispute. We thus affirm the WCCA's holding with respect to any award of attorney fees based on future medical expenses.

## IV.

■ Irwin's final assertion is that attorney fee reimbursement to the employee pursuant to Minn.Stat. § 176.081, subd. 7 (1998), should be based on all attorney fees paid pursuant to Minn.Stat. § 176.081, rather than only on contingent fees paid out of the employee's award. The compensation judge awarded subdivision 7 fees based on all attorney fees awarded, and the WCCA reversed, holding that subdivision 7 is intended to reimburse the employee only for attorney fees paid by the employee.

Subdivision 7 states in part:

If the employer or insurer files a denial of liability, * * * or fails to make payment of compensation or medical expenses within the statutory period * * * or otherwise unsuccessfully resists the payment of compensation or medical expenses, * * * and the injured person has employed an attorney at law, who successfully procures payment on behalf of the employee * * * the compensation judge, commissioner, or the workers' compensation court of appeals upon appeal, upon application, shall award to the employee against the insurer * * * in addition to the compensation benefits paid or awarded to the employee, an amount equal to 30 percent of that portion of the attorney's fee which has been awarded pursuant to this section that is in excess of $250.

Minn.Stat. § 176.081, subd. 7 (1998).

The WCCA has treated subdivision 7 awards as reimbursement to the employee for attorney fees deducted from his compensation award pursuant to the contingent fee formula. *See Sailes v. Ford Motor Co.*, 1992 WL 383680 (Minn. Workers' Comp. Ct.App. November 18, 1992); *Bednar v. Interior Wood Prods.*, 1991 WL 88589 (Minn. Workers' Comp. Ct.App. February 26, 1991). More recently, the WCCA refused to award subdivision 7 fees for a different reason. *See Salahud–Din v. Compassionate Care Group*, 1997 WL 815380 (Minn. Workers' Comp. Ct.App. December 16, 1997). There, the WCCA reasoned that because traditional *Roraff* fees were paid pursuant to Minn.Stat. § 176.135, rather than § 176.081, which previously made no provision for an award based on medical expenses, *Roraff* fees were not paid "pursuant to [section 176.081]" and thus subdivision 7 fees were not appropriate. *Id.* at *2.

■ However, the 1995 changes to Minn.Stat. § 176.081 added a provision for attorney fees based on medical expenses. *See* Minn.Stat. § 176.081, subd. 1(a) (1998). Subdivision 7 allows an award to the employee on an "attorney's fee which has been awarded pursuant to *this section.*" *Id.* § 176.081, subd. 7 (1998) (emphasis added). In *Mack*, 333 N.W.2d at 747, we followed the plain language of the statute, which provided, as does the current statute, for an award of subdivision 7 fees based on attorney fees awarded "pursuant to *this section.*" *Id.* (citing Minn.Stat. § 176.081, subd. 7 (1982)) (emphasis added). We there held that subdivision 7 awards should be made on all attorney fees awarded under section 176.081, even those fees paid by the employer. *Id.* Thus, under the plain language of the statute, a subdivision 7 award should be based on all attorney fees paid pursuant to Minn. Stat. § 176.081, including attorney fees based on medical expenses pursuant to Minn.Stat. § 176.081, subd. 1(a). We therefore reverse the holding of the WCCA.

Affirmed in part, reversed in part, and remanded.

STRINGER, J., took no part in the consideration or decision of this case.

RUSSELL A. ANDERSON, Justice (dissenting).

I respectfully dissent. The narrow issue before us is the validity of section 176.081,

subd. 1(a)(1) (1998) as it relates to the calculation of an injured employee's attorney fees when such fees are shifted to the employer and its workers' compensation carrier. Given that the subject matter is a statutory right imposed on the employment relationship pursuant to the police power of the state, and in view of the American Rule pursuant to which courts may not award fees against the unsuccessful party in the absence of a statute or contract, I can only conclude that statutory limitations on fee shifting do not violate the Separation of Powers Clause of our constitution. While the limitations contained in the current legislation might implicate serious due process concerns to the extent they might deprive a claimant of adequate legal representation, they do not amount to an assumption of judicial power.

The majority relies in large measure on dictum found in *Mack v. City of Minneapolis*, 333 N.W.2d 744, (Minn.1983), to conclude that statutory limitations on fees effectively deny judicial review, in the sense that fees may not be awarded beyond the statutory maximum, and therefore violate the Separation of Powers Clause. *See id.* at 752–53. The relators in *Mack* asserted a separation of powers challenge to the legislative imposition of limits on fees and the assignment of responsibility to set those fees to the workers' compensation commission. *See id.* Although the *Mack* court surmised constitutional boundaries to the regulation of fees, it was the legislative assignment of quasi-judicial functions to the workers' compensation commission, the executive branch, which caused separation of powers concern and not the establishment of statutory limitations on fees in the first instance by the legislature. *See id.* Given this court's review of fees set by the commission, and in view of the nearly uniform practice throughout the country of assigning responsibility for the supervision of fees to the commission or court handling compensation administration, we declined to invalidate the statute allowing the commission to set those fees as a violation of the Separation of Powers Clause. *See id.* at 753. In the present case, however, the majority has essentially declared that legislative limitations on fees encroach on the judiciary's inherent power to regulate attorneys and their fees.

Under the "American Rule," unless authorized by statute or contractual agreement between the parties, "the prevailing litigant is ordinarily not entitled to collect a reasonable attorneys' fee from the loser," *Alyeska Pipeline Co. v. Wilderness Soc'y,* 421 U.S. 240, 247, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975). The rule dates back to the beginning of the United States federal system. *See, e.g., Arcambel v. Wiseman,* 3 U.S. (3 Dall.) 306, 306, 1 L.Ed. 613 (1796). That fees may not be shifted in the absence of a statute or contract was settled more than 100 years ago in this state by *Kelly v. Rogers,* 21 Minn. 146, 152–53 (1874). With limited exception, this court has consistently adhered to the American Rule. *See, e.g., Kallok v. Medtronic, Inc.,* 573 N.W.2d 356, 363 (Minn. 1998); *Fownes v. Hubbard Broadcasting, Inc.,* 310 Minn. 540, 542, 246 N.W.2d 700, 702 (1976); *Benson Cooperative Creamery Association v. First Dist. Ass'n,* 276 Minn. 520, 530, 151 N.W.2d 422, 428 (1967). The obvious corollary of this oft-recognized rule that fees may not be shifted absent contractual or legislative authorization is that the legislature, not the court, has the power to determine when, or if, an attorney should be awarded attorney fees against unsuccessful litigants. In my view the legislature has the power to determine when such fees should be awarded and in addition possesses, inherent within this power, the authority to establish statutory maximums. Our role is to review the application of this statutory scheme to ensure that the lower courts have applied it properly.

The majority also contends that a statutory maximum infringes on this court's power to regulate the practice of law. I disagree. In the context of compensation

**146**

for attorneys representing indigents in criminal cases, courts elsewhere have acknowledged that statutory maximums on fees do not infringe on the court's power to regulate the practice of law. *See, e.g., Pickens v. State,* 301 Ark. 244, 783 S.W.2d 341 (1990); *Makemson v. Martin County,* 491 So.2d 1109, 1112 (Fla.1986), *cert. denied,* 479 U.S. 1043, 107 S.Ct. 908, 93 L.Ed.2d 857 (1987). The role of the legislature in restricting attorney fees in workers' compensation matters has long been recognized as a proper exercise of the police power of the state. *See Yeiser v. Dysart,* 267 U.S. 540, 541, 45 S.Ct. 399, 69 L.Ed. 775 (1925). In fact, most states have statutory restrictions on workers' compensation fees. *See* 8 Arthur Larson and Lex K. Larson, *Larson's Workers' Compensation Law,* § 83.14 at 15–1416 (1998). In that the regulation of workers' compensation fees is a proper legislative function, I would not invoke the Separation of Powers Clause as a basis for invalidating the statute.

That is not to say, however, that the absolute ceiling on fees for the recovery of medical benefits would necessarily be constitutionally permissible. But unless it can be shown that a regulatory scheme makes legal representation unavailable, evidencing the illegitimacy of the scheme, the scheme does not violate constitutional protection. *See United States Dep't of Labor v. Triplett,* 494 U.S. 715, 724, 110 S.Ct. 1428, 108 L.Ed.2d 701 (1990). Although relators argue that the statutory limitation on fees for the recovery of medical benefits deprives claimants of adequate legal representation, no evidence was heard or factual findings made. I would remand these cases to the compensation division for the development of a record, factual findings and legal conclusions pertaining to whether workers' compensation claimants are unable to retain qualified counsel and whether the cause of such inability is the fee system set up by the legislature.

LANCASTER, Justice (dissenting).

I join in the dissent of Justice RUSSELL A. ANDERSON.